1831.

Jewett and another *v.* Woodward and others.

JEWETT
*v.*
WOODWARD.

When creditors choose to come in under an assignment and claim the benefit of it, they must comply with the terms which the debtor has imposed.

Where an assignment provided, that should there not be sufficient to pay the debts in full, the assignees might compromise as to the same, and require discharges on payment of a dividend : *It was held*, this did not compel the creditors to release the whole of their demands before they could take a dividend.

Creditors who commence legal proceedings against the property of their debtor, but abandon such proceedings, are not thereby precluded from receiving a dividend under a trust deed nor from calling the assignee to an account. The doctrine of election does not apply to such a case.

Voluntary assignees are not entitled to charge a commission, except under express agreement : Still, *it would seem*, that in some cases a compensation on the ground of *quantum meruit* would be just.

*It seems*, that, generally, the best way to get at the amount of compensation to be allowed to an assignee under a trust deed, will be to enquire the value of his services and the length of time employed and fix the amount by way of salary or by a *per diem* allowance.

The bill in this cause was filed in behalf of the creditors of Beecher Porter, who had assigned his property to the defendants, William A. Woodward and Edward Kellogg, for the benefit of those persons to whom he was indebted. His failure took place at Columbia in South Carolina on the thirteenth day of February one thousand eight hundred and twenty-six. The trust for payment of the creditors was to this effect: " To pay " or cause to be paid whatever sums may be collected under " the assignment in just and equal proportions to the just credi- " tors of the said Beecher Porter ; provided that, should the " avails of the assignment be insufficient to pay the debts in full, " the assignees are authorized to compromise the same, requir- " ing discharges on payment of the dividend."

The defendant, William A. Woodward, was the clerk of Porter at the time of his failure ; and, under the assignment, he

*Oct.* 17, 18,
1831.

*Debtor and
creditor.
Composition
deed.
Compensation
to voluntary
assignee.*

took charge of the property, consisting of a store of goods and outstanding debts to a large amount. The defendant, Kellogg, resided in the city of New York and Woodward remitted some money to him and also sent him the assigned goods. The latter were sold here; and upon the New York creditors (including the complainants) giving receipts by way of indemnity to Kellogg, he divided amongst them the proceeds and money.

The complainants went for a discovery and account; and charged, that the defendant Woodward still held a large amount of the estate and to which the creditors were entitled under the assignment.

Woodward alone put in an answer. He thereby admitted having in his hands, by virtue of the assignment, one thousand and seventy-eight dollars, over and above his just claims against the estate, (as appeared by an account attached to his answer.) This amount, he stated his readiness to pay over, under the direction of the court and upon being released from all responsibility.

On the nineteenth day of May one thousand eight hundred and twenty-eight an order was made which required Woodward to pay the one thousand and seventy-eight dollars into court. This was done. The same order directed one of the masters of the court to ascertain and determine, from the pleadings and proofs to be produced before him, what sum was held by Woodward as a trustee, and also the amount he reasonably deserved to have and ought to retain by way of compensation for his services.

Under this order and on the thirtieth day of December one thousand eight hundred and twenty-eight, a report was made by Master Bolton, showing that, after paying the one thousand and seventy-eight dollars into court, the defendant Woodward had in his hands the sum of two thousand four hundred and fifty-nine dollars and fifty-two cents; but which, in the opinion of the master, he was entitled to retain by way of commission and compensation.

This report, however, was subsequently opened, with leave to the parties to produce further testimony. It was afterwards sent to another master; who, on the first day of June one

thousand eight hundred and thirty-one made a report, stating
that Woodward had in his hands, as trustee, the sum of two
thousand five hundred and twenty-nine dollars and fifty-nine
cents, being the amount he had retained for commission and
compensation, with seventy dollars in addition, which he had
charged as a disbursement for counsel fees in the present suit.
The master also reported that Woodward was entitled to the
sum of six hundred and forty-three dollars and eighty-eight
cents by way of services as an acting trustee.

The defendant, Woodward, excepted to this report; and the
cause now came before the court upon the exceptions and the
equity reserved.

Mr. *Samuel A. Foote*, for the complainant.

Mr. *Jesse Hoyt*, for the defendant Woodward.

THE VICE-CHANCELLOR.   In this case it is first contended,
that the creditors have no rights under the assignment and
cannot call the assignees to any account, without complying or
offering to comply with the condition of the assignment; and
which, it is said, requires the creditors to discharge their debtor
from all further demands before they can participate in the
property assigned.   Whether this be so, depends upon the
meaning of the instrument: for it is undoubtedly true, that
when a debtor makes a voluntary assignment of his property,
and the creditors choose to come in under it and claim the
benefit of its provisions, they must comply with such terms or
conditions as the debtor has thought proper to impose.   The
question arises upon the clause introduced by way of proviso:
that should there not be sufficient to pay the debts in full, then
the assignees are authorized to compromise as to the same, re-
quiring discharges on payment of the dividend.   I do not
understand this clause as amounting to a condition that the
creditors shall release their whole demands or not partici-
pate in the dividends of the trust property.   It is not so
expressed.   Such a construction would render the assignment
void, as fraudulent in law.   It is the business of this court to

*1831.*

JEWETT
*v.*
WOODWARD.

*December 19.*

give it an interpretation which will be consistent with honest motives, if the words which are used can possibly admit of it: see *Archibald* v. *Thomas*, 3 *Cowen*, 284. It plainly appears they will admit of this: for they import merely an authority to compromise the debts and (in that event) to require discharges from the creditors. If the creditors choose not to compound, I see nothing to prevent them from receiving or the assignees from paying a proportion of the debts under the previous part of the trust-clause. By putting this construction upon the instrument, it is rendered effective as a valid and *bona fide* transfer of the debtor's property; and I must presume such to have been the object and intention of the assignor. It is said, however, that the creditors have considered it otherwise, by commencing proceedings against Porter as an absent debtor and giving notice to Woodward—thereby treating the assignment as invalid and the property as still belonging to their debtor. This seems to have been an unnecessary and rather a vexatious proceeding; but I do not perceive how the creditors, by so doing, deprived themselves of a right to come in and claim under the assignment, provided the proceedings proved unavailing or they thought proper to abandon them. The doctrine of election does not apply to a case like the present; where the question is merely as to the remedy or mode of proceeding. If one remedy fails, the party may oftentimes resort to another. Nothing is more common than to leave a party to his bill in equity, after a fruitless attempt at law; and, *vice versa*.

I am of opinion there has been no waiver or abandonment of the right to come in under the assignment and ask for a distribution of the trust funds.

It is to be observed, the objection is not made by the debtor. He has suffered the bill to be taken as confessed; and thereby admits the creditors have a right to an account and distribution. Nor does he insist upon the performance of any conditions by them. Under these circumstances, the defendant Woodward will be protected from all liability to the debtor, his assignor, when he has accounted and paid over the money under the decree of this court. This indemnity is all he is entitled to ask.

Nothing, therefore, remains but to see the accounts are properly taken; and Woodward sufficiently compensated for his services as a trustee. He excepts to the master's allowance of six hundred and forty-three dollars and eighty-eight cents as altogether too low; and insists he ought to be permitted to retain the whole sum in his hands, according to the former master's report. I should have felt better satisfied if the allowance had been greater; but, on looking into the evidence laid before the master, I do not perceive upon what principle it can be increased. Voluntary assignees are not entitled to charge a commission, as such: unless they have taken care to secure to themselves the right by express reservation or agreement; although, in many cases, I have no doubt, with a view to compensation upon the ground of *quantum meruit,* the court would do right to adopt, by analogy, the same rate of commissions which guardians, executors and administrators are authorized by law to charge for similar services. Perhaps, generally, the only mode is to enquire into the value of the services and the length of time employed and fix the compensation by way of salary or as a *per diem* allowance. This method, I understand, was adopted by the master in the present suit: he having enquired as to the length of time the defendant was engaged in the business of the trust, so far at least as related to the funds in question and the salary he was receiving as a clerk. Under the circumstances, no other rule could have been resorted to with propriety. The defendant could not have charged commissions on the large amount of goods packed up and sent to his co-trustee, who, with the agents of the creditors, took upon themselves the labor and responsibility of converting those goods into money and of making the distribution; nor would commissions upon moneys received from collections have been an adequate compensation for the services which he has in fact rendered. I have not been able to discover any regulation on this subject in South Carolina, other than as relates to executors, administrators and such as act in the character of legal trustees. These, by a law of the State, are entitled to charge a commission of two and a half per cent. on all moneys received; and the same on all sums paid out.

1831.

JEWETT
*v.*
WOODWARD.

Although the *lex loci* would govern this court in cases to which it could apply, yet this is not a case provided for by any particular law of that State. It must, consequently, be disposed of upon general principles.

I must confirm the master's report as respects the allowance of six hundred and forty-three dollars and eighty-eight cents to the defendant Woodward for his services as acting trustee.

There is, however, another part of the report which I think requires to be modified. I allude to the disbursements for counsel fees, amounting to seventy dollars. I shall permit the defendant to retain this sum out of the balance in his hands. It does not appear he has improperly or unnecessarily litigated the matter. From the course which the creditors have pursued against Porter, the assignee was justified in not paying over the funds, except under the direction of the court. He is entitled to be indemnified in his costs and counsel fees. He is to pay the balance into court, which is to be distributed among those creditors who shall come in and prove their demands before the master.

Upon payment of this balance into court, the defendant Woodward is to be discharged from the trust.