Robinson, J.
This assignee, under a general assignment for the benefit' of creditors, dated November 12, 1874, after the expiration of a year, was called to , an account by Julius Solmson, one of the creditors of . the insolvent debtor. An order of reference to a referee to examine such account was made by a judge of this court, which further directed him “to hear and determine” as to the matters appertaining to the assignment, and account and report thereon.
The order was improvident, so far as it authorized the referee to hear and determine any matter in controversy, arising upon objections or exceptions taken to any account rendered by the assignee, as any such judgment rested wholly with the judge (Laws of 1875, chap. 56, § 2). The action of the referee is subsidiary to and subject to the supervision of and correction by the officer appointing him.
On the accounting, thus ordered, the assignee, presented an account, charging himself with the proceeds of the goods assigned and sold by him at retail, from November 12 to December 28, 1874, $620, and proceeds of goods sold at auction, December 81, $790, making ''together -but $1,410, proceeds of property scheduled *179 and valued, in the inventory accompanying the assignment, at $2,649.50.
Against this assumed amount of receipts, he claimed credit for rent paid the landlord, $250; clerk-hire, stationery; coal, &c., $297.75; auctioneer’s fee and advertising, $83.70; counsel fee for assignment and two dispossession proceedings, $337 ; paid accountant examin- ing books, $50 ; counsel fee defending suit ads. Lewis,' and appeal to general term, $150; assignee’s fees and expenses, $150 ; making an aggregate of $1,318.45, and leaving a balance admitted on hand of but $91.55.
The referee has allowed all these credits, or discharges, as valid claims of the assignee, except $50 for accountant examining books, and $120, part of assignee’s charge for commission and expenses, making together $170, which, with the balance of $91.55 otherwise admitted, made $261.55 (but stated in the referee’s report at $260.62) for distribution among creditors.
The exceptions to this report, as presented on behalf of Mr. Solmson, the creditor claiming such accounting, are of the most general and indefinite character, to wit: “1st. That the referee erred in allowing all the claims of the assignee as correct.” The referee did not allow “ all such claims,” and the exception is without point or specification, as to any error claimed to have been committed in this respect. 2nd. That he also erred in allowing the several sums paid by the assignee for attorney’s and counsel’s fees.” This would seem to be the only matter of contest presented by the exceptions; for, as to the 3rd exception, that “he erred in saying that the assignee used due diligence .in collecting accounts due the estate,”—no such accounts are shown to have existed which the assignee was called upon to collect. The court can only regard as grounds for judicial action objections specifically and formally interposed by the creditor, and-not any merely suggested on the oral argument.
*180 This accounting is but. a partial one, had at the instance of a single creditor, to enable him to obtain a decree for payment of his just proportionate part of the (assigned) fund and being had on his application, in no way prejudices other creditors, whether they proceed in like manner on their own behalf, or they appear, upon citation, on a final accounting. While, on such other accounting, serious questions might be raised, when properly presented, as to propriety of the charges allowed for rent and clerk-hire (Hart v. Crane, 7 Paige, 310; Carman v. Kelly, 12 Hun, 283); and for auctioneer’s fees, this litigation is reduced to the question as to the propriety of the allowances for sums paid by the assignee, for “Counsel fee for assignment and two dispossess-proceedings, ........$337.00 Counsel fee defending suit ads. Lewis, and appeal to general term,........150.00 —together amounting to $487.00.
No other specification of items is made, nor bill of the attorney and counsel, containing any such items, as are charged ; except that to support the payment, the person so acting as attorney and counsel, proceeds, on the hearing before the referee, to specify his charges as follows: “For a retainer for consultations and advice from time to time, and for drawing the assignment, and services immediately connected therewith, $150; for preparing and sending notices of a meeting of creditors at Bemak’s store, and representing him at the meeting, $35; for two several dispossessing proceedings, instituted by authority of the assignee in the name of Bemak, against one Wolf, $50 each; for costs in defending suits brought against Bemak, the assignor [by several creditors recognized in the inventory or schedule accompanying the assignment], to wit, by Lewis Bro. v. Bemak, charge, $150; by petitioner Solmson v. Same, $50; by Hatch v. Same, $40; Frank *181 v. Same, $50; disbursements in these suits or proceedings, $73.50. All being for services in defending suits against the assignor, except the dispossessing proceedings against Wolf.
These claims entirely vary from those allowable, and are, in no respect, such as the assignee was or could have been necessarily compelled to incur in the execution of his trust.
Neither the assignee, nor the assigned estate (so far as appears), was in any way affected by these suits that were instituted against the assignor, after the assignment. A provision in any such assignment authorizing the assignee to use or employ the proceeds of the assigned estate, in defending suits that might be brought against the assignor, by his creditors, to recover their several debts, would have the effect to hinder and delay creditors, and would have rendered the assigment void (Mead v. Phillips, 1 Sandf. Ch. 83; Planch v. Schermerhorn, 3 Barb. Ch. 644; Litchfield v. White, 7 N. Y. 438; Olmstead v. Herrick, 1 E. D. Smith, 310). That which the assignment might not lawfully provide and direct in express terms, could find no justification under any implied authority derivable under it. This disposes of all the charges for defending suits brought against the assignor to recover debts claimed to be due by him, as they were not incurred in the performance of any duty imposed upon the assignee by the assignment.
So also, the prosecution of dispossessing proceedings, in the name of the assignor, against one Wolf, to recover possession of some property in Chatham street (not identified), are of the same character. No leasehold premises were intended to be assigned, nor any right to continue the assignee as tenant, holding over and incurring rent for the purposes of the assignment, was thereby contemplated. His profitless litigation in the name of the assignor, for any such purpose, finds no *182 justification, either in its necessity or prudence, as an act in any way tending to the benefit of the assigned' estate; and the charge for giving notice to creditors to meet at Bemak’s office, was one that grew out- of the .assignee’s own unauthorized acts, and was, in no way, to be properly defrayed by the estate.
While the assignee, as trustee for the benefit of creditors, is entitled to indemnity and reimbursement,out of the assigned estate, for all necessary expenses incurred by him in, the execution of his trust, his right to incumber the trust estate'or involve it in the expense of litigations and the employment of professional advisers, or other expenses, is limited to such cases as reasonably call for professional advice, or the incurring, of the expense which "one of ordinary prudence and caution would undertake in the management of Ms-own affairs.”
In the ordinary performance of such duties, as an assignee for the benefit of creditors assumes, he at-least engages for his-own personal competency to perform them, and he canndt involve the estate in the expense of employing counsel to advise him as to duties he has thus assumed, unless it were-shown that some unusual complications existed which rendered it reasonable and proper that professional advice should be called in to' extricate or allexdate the affairs of the' assigned estate from some unanticipated complications. No such convenient rule exists' as enables an assignee,at the expense of the estate,-to retain a lawyer, as one among other employees that he may necessarily employ, for the purpose of affording, him' general advice as to his conduct, in his office as trustee. The special exigency, and reasonable'necessity,,for the incurring of any such expense in the execution of the trust, must, in all cases, be shown.
The proof adduced by the assignee, in the present-case, iaffords him no justification for entering into any *183 litigation by way of, dispossessing proceedings instituted in the name of Bemak, the assignor, against Wolf, and the charges for expenses therein are disallowed.
Further consideration is necessary as to the item of $150, claimed to have been paid to the attorney, as testified to by him, as a retainer“for consultations and advice - from time to time, and for drawing the assignment and-, services immediately connected therewith. ’ ’ Such charge as was proper for drawing the assignment should be allowed. It it about four folios in length, and comprises no special provisions beyond what was within the capacity and province of an ordinary conveyancer, or any mere tyro in the profession. It might probably (for any thing that appears), be found as an ordinary law blank with the law stationers. Certainly a charge of $25 for its preparation, and attending to its execution, would be liberal. The inventory and schedules were to be prepared by the assignor (Act of 1860, § 2), and called for no services on the part of the conveyancer or counsel. The first provision of the assignment was,for the payment, out of the proceeds of the sale of the assigned property, of “ the cost of this assignment, and the costs of the sale and necessary outlays or expenses incurred in the execution of this trust.” This proceeding being in affirmation of the assignment, such expense of preparing it is recognized as a proper and preferred disbursement to be made out of the trust funds ; but the occasion and necessity “for consultations from time to time,” or the value of the advice given, in. a matter" so terribly mismanaged that, out of property assigned, valued at $2,649.50, but $91.55 should be realized for creditors, is not shown.
To characterize the value of the advice rendered, by the results it produced, would condemn it as worse than useless; and to claim that, under the consultation given from time to time, such professional advice entitled the assignee to exact from the assigned estate, *184 therefor some $125, must rest upon some principle unseen or unappreciable, and which the law cannot recognize upon the facts disclosed. The apparent disaster to an estate valued at over $2,600, under such advice, has resulted in its absorption or almost entire annihilation under alleged valid claims for just expenditures, so" that less than $100, as is claimed by the assignee, and as attempted to be maintained by the same counsel, results therefrom. The case upon the testimony, in my.opinion, shows a reckless waste of the estate, in the attempt of the assignee to carry on the business that had previously been conducted by the assignor ; in the useless incurring of expenses for clerk-hire, rent, &c.; in employing and in retaining counsel, to afford him advice enuring specially to his own benefit ; all resulting in various depreciations in the value and legitimate proceeds of the property assigned, through neglect in making an immediate or early sale of the assigned property, and continuing the retail business, with attendant expenses of clerks, rent, gas, &c., when the sale should have been had immediately, without the incurring of any such expenses. Objections in these respects not having, however, been properly made by or on behalf of Solmson, the prosecuting creditor, they are unavailable in his interest, except as to such as he has specifically urged against what I regard as an unconscionable claim for attorney and counsel fees to the extent of $487, in an estate realizing but about $1,400. The consideration that a great number of cases will come before this court in its necessary administration of the act of 1860, and its amendments, require this expression of an opinion upon such an administration of an assigned estate, and the claims made as “ necessary expenses,” alleged to have been incurred by the assignee by way of “clerk-hire and rent” as “expenses,” in the proper administration of the assigned estate, and for “lawyer’s *185 charges,” in aid of the assignee in the performance of such duty as he personally assumed by accepting the assignment.
The positive duty of' the assignee in such cases, is to sell and convert the assigned property into cash for the purpose of distribution with the least possible delay, having regard to the nature and character of the assigned property, and to incur no expense except such as was “necessarily” incident to and required for the execution of his trust; to assume no other course of action than (as required by the assignment) “to sell and convert the assigned estate into cash,” with reasonable expedition; especially not to attempt to carry on the business of the assignor, with its incidental expenses, without knowingly and deliberately assuming the obligation of a guarantor that his attempt thus to depart from his stringent obligation as assignee to sell ” without delay, shall result in a benefit to the creditors. If, in contravention of this obligation, the assignee assumes, under pretense of the exercise of a discretion, to conduct and carry on the business of the assignor, or to delay the immediate and summary execution of his trust, he must be held to assume all risks that the amount he may hereby realize from the assigned property shall at least be as much as what might have been obtained from such immediate execution of the trust. In this respect “ delays are dangerous,” and the assignee assumes all such hazards, in case of failure on his part to make such immediate sale, or in doing or omitting any other act by which he hinders or delays creditors in obtaining an immediate or early realization of their just proportion of the assigned estate. The idea that a general assignee for the benefit of creditors can, in the exercise of any proper discretion imposed upon him by virtue of an assignment, proceed to conduct and carry on the previous business of the assignor, so long as he pleases to *186 do so, or to do any act in respect thereto, except such as tends to the most speedy conversion of the assigned estate into cash, is wholly untenable, and the acts of the assignee tending to any other result, are (equally as if committed by the debtor) in fraud of the creditor, in hindering and delaying him in the realization of what is-justly due him, either from his debtor,, or from the assigned estate. The interposition of a court, of equity in preventing the exaction of such right to the immediate • enforcement of the claims of creditors,. can only be justified by a well-established case of necessity, wherein it is clearly made to appear that, such peremptory action would result in a destruction of, or such material injury to the assigned estate as would render the enforcement of the claim of the presecuting. creditors inequitable as against others concerned in a contrary or. opposite course of proceeding.
An assignee and his sureties, under a general assignment, in trust to sell, and pay creditors, are responsible for the just value of the property immediately coming into the. possession or control of the assignee. by virtue of the assignment, and for its immediate conversion (with reasonable expedition) into, money, by private or public sale. Attempts to convert it. into cash by carrying on the business of the assignor, at retail, involve the responsibility that it should thereby (after deducting all expenses),, realize at least as much as if immediately sold by the assignor by private or public sale, and that no injury occurred to the creditors from any delay.
While the judicious efforts of. an assignee for the benefit of creditors, to carry on the business of the. assignor;. or to convert the assigned property into cash through, deferred credits; by manufacturing of raw material, or altering goods into such other kind of property as might prove more available, might be regarded as more advantageous, than by peremptory *187 sale, and be held as morally commendable, such efforts and experiments are, however, at the risk of the assignee and his sureties, so far as they prove unprofitable, and are not assented to by the creditors, and they are legally unjustifiable as against the non-concurring creditors.
The position and office of an assignee for the benefit of creditors, has become more and more with occurring legislation that of a quasi public officer (Nichols v. McEwen, 19 N. Y. 27). Instead of being, as at common law, the mere agent and trustee of the immediate parties to the assignment, his duties “are very much such as a sheriff may perform under an execution” (Nichols v. McEwen, supra), and he is now subjected to such jurisdiction in the county court as the surrogate exercises over an executor or administrator in compelling an account; in settling the same, and adjudging payment of any debt out of the trust fund; and to his summary removal and substitution of another trustee by reason of his insolvency, or for other cause, &c., by a court of equity (1 R. S. 730, § 70) on petition or complaint.
The control of his- action, therefore, becomes more stringent, and his accountability more rigid, by reason of the necessity that the judge should regard the interests of unrepresented and unknown creditors or parties. The action of the county judge is controlled by such statutory and common law rules as prevail in proceedings for accountings had and conducted before a surrogate for the settlement of the estates of deceased persons.
The claim of the assignee for an allowance of a credit for $487, paid attorney and counsel, is disallowed to any extent beyond $35 for drawing and supervising the execution of the assignment. This is only allowed because provided for in the assignment as a preferred debt.
The exceptions to the report of the referee, taken by the prosecuting, creditor, are allowed in respect to *188 the items of the assignee’s account: "Counsel fee for assignment, and two dispossessing proceedings, $337.” “ Counsel fee defending suit ads. Lewis, and appeal-to general term, $150 together amounting to $487, except as to the said sum of $25,—otherwise the report in this proceeding is confirmed. Costs are allowed to the opposing creditor.*

 The following precedent of exceptions to a referee’s report on accounting of an assignee will be useful in this connexion. Exceptions, sufficient of which are given below to serve as a precedent, were overruled at special term ; but on appeal were sustained .and the report confirming the account set aside (Anonymous v. Gelpecke, 5 Hun, 245; Bernard Roelker, for the exceptants).
Exceptions taken by defendants, in this action, to the report of W. C., Esq., the referee to whom the action was referred by an order of this court, dated , for the purposes therein set forth :
I. For that the referee allowed and reported as correct the item in the assignee’s account of assets collected, bearing number , by which it appears that he collected only $64,870.95, or twenty-five cents in the dollar of the par value of the certain assets that have come to his hands, and which the assignees ought to have realized at par, which assets were [designating them], instead of collecting the full amount of the face of the said with interest; whereas the referee ought to have found and reported, that the trustee, the plaintiff, has not realized the full value of said assets. The said defendants, as reason for this their exception and objection, among others, state :
That plaintiff acted in this compromise without the knowledge or consent of his co-trustee, and also without the knowledge or consent of or notice to the cestuis que trust, the creditors of the estate; that no legal measures were taken to enforce the several claims against the city; that said defendants, if they had known of this contemplated sacrifice of these claims against said city, would themselves have been willing to give double the sum for which they were parted with.
That the pretended order of the court, dated , under which the plaintiff claims to have acted, was and is null and void as to the cestuis que trust, the defendants, as creditors, inasmuch, among other reasons, as the proceedings were had without any notice to the creditors, or making them parties to the proceeding, and without the consent or knowledge of the co-trustee. "
That the city of Dubuque was not insolvent or without any available *189 means or prospect of paying its debts ; but on the contrary was able to and did pay other debts and judgments against them in the year 1870 ; that at present, and for some time past, the same ten per cent, bonds sell and sold for , &c., and that fifty cents in the dollar for the principal, and fifty per cent, for the interest thereon, would be readily obtained.
II. For that the referee allowed and found as correct the items in the plaintiff’s accounts on the debit side, under dates of March 19, 1869, $30,000; April 7, $5,000; April 10, $5,000; July 31, $24,870.95, for the claims against the city of Dubuque, whereas the referee ought to have found and reported that the said sums realized from said assets are not the full value of the claims, and that the plaintiff received the several sums therefor much below the price which he ought to have obtained and disposed the same for, and that he, the plaintiff, might have realized out of said assets.
DI. For that the referee allowed and found as correct in the plaintiff’s account the charge or item on the credit side under date November 25, 1867, $1,765.54, paid to for legal services, whereas the referee ought to have found and reported that said amount is too high for the services for which the amount was paid; and further, that the court or-judge who made the order for this extra allowance in said order of had no power to order such allowance.
FV. For that the referee found and reported that the first, second, and third objections filed with and submitted to the referee by and on behalf of the said defendants, who have appeared and answered in this action by B. R., Esq., as their attorney, were not established by the evidence and in conformity with the directions in said interlocutory order, whereas the referee ought to-have found and reported that each of said objections were well founded in fact and in law,
V. For that, &c., &c.