In the Matter of the Assignment of RAUTH & SON to CHARLES SCHLANG for the Benefit of Creditors.

[SPECIAL TERM.]

(Decided April 15th, 1880.)

Although the Court of Common Pleas is not bound to allow commissions to an assignee for the benefit of creditors, as the surrogate is bound to allow commissions to an executor or administrator, yet, unless a clear case of fraud or misconduct on the part of the assignee is shown, his commissions will not be denied him.

An assignee for the benefit of creditors will not be allowed the expenses of carrying on a retail business as such, but he should be allowed the reasonable expenses of preparing goods for sale at auction.

An allowance may properly be made to an assignee for the benefit of creditors for services rendered by counsel in the preservation of the estate ; and where difficult questions of law arise, the assignee may lawfully employ counsel to advise him as to his duty and charge the estate therefor.

Upon the removal of an assignee for benefit of creditors without any proof of fraud or misconduct on his part, the estate should bear the expenses of his accounting.

In the provision of section 26 of the General Assignment Act, authorizing the court in its discretion to "award reasonable counsel fees and costs," the words "reasonable counsel fees" do not mean an extra allowance such as is provided for by the Code. The court, in determining what costs should be allowed on an accounting, will, in the absence of any statutory provision on the subject, adopt the scale of costs allowed by the Code, and allow such costs as would be awarded on the trial of an issue of fact in a civil action.

What particular items of costs may be allowed on an accounting by an assignee.

On an application to confirm the report of a referee upon an assignee's account, the court cannot pass upon matters as to which no exceptions to the report have been filed.

APPLICATION to confirm the report of a referee upon an accounting by an assignee under a general assignment for the benefit of creditors.

The facts are stated in the opinion.

VAN HOESEN, J.—I. In the case of *Halsey* v. *Van Amringe* (6 Paige, 12), the Chancellor did not deem it necessary to pass upon the question as to whether the Court of Chancery could disallow commissions where an executor or administrator had, fraudulently mismanaged the estate, but he did decide that commissions could not be disallowed by a surrogate, who is an officer of limited powers, and who, to use the language of the Chancellor, "takes no power by implication." The duty of the surrogate is to obey the statute, which requires him to allow to executors and administrators specified commissions for their services. The allowance to an executor of his commissions is held not to be a matter of grace, but of right, even though, by his misconduct, he should have subjected himself to liability for compound interest (*Rapelje* v. *Hall*, 1 Sandf. Ch. 406), or though he should have been guilty of gross negligence (*Meacham* v. *Sternes*, 9 Paige, 405).

The powers of the Court of Common Pleas are not limited as are those of the surrogate, for, by section 25 of the Assignment Act, it possesses, in all proceedings arising under that act, "the powers of a court of equity in reference to the trust and any matters involved therein." These powers, in many cases, may be exercised, though a formal action, corresponding to a suit in equity, be not pending; but it is not necessary now to determine whether or not the court will or can withhold the commissions of an assignee who has violated his trust. In the case of Marquand (*ante*, p. 27), the assignee had, in fact, got in the whole of the assigned estate, and then had used the moneys in his hands for the purchase for his own benefit, of claims against the estate. Of course, I refused to allow him commissions upon moneys laid out by him in buying claims. A surrogate could properly have withheld commissions upon moneys expended under similar circumstances. The moneys were not paid out within the meaning of the law,

they were misappropriated, and used by the assignee for his private speculations. In this case, however, Schlang, the assignee, has violated no duty. He was removed, as appears by the decision of Chief Justice DALY, because his domestic relations were such as to make it probable that his feelings might conflict with his duty. The Chief Justice said that the removal should be made under the principle established by the Burtnett case, which was a case in which the assignee had been the attorney and confidential adviser of the assignor's wife, and employed by her to collect a claim, which, if paid, would have absorbed a large part of the assigned estate. The validity of the claim was disputed by creditors, and though nothing inconsistent with honor and duty had been done by the assignee, it was held to be better that the assignee should not be a person whose bias, at least, was in favor of the wife, and against the other creditors (*In re Cohn*, 20 Alb. L. J. 352).

It is insisted, however, by Mr. Severance, who represents some creditors, that as he made a number of charges against Schlang, and as a removal followed, we must assume that all the charges have been established as res adjudicatæ, notwithstanding the decision of the Chief Justice, which declared that the case presented was within the principle of the Burtnett case. No such inference can be drawn. The truth of Mr. Severance's charges has never been passed upon, and it would be the grossest injustice to assume that Schlang had been found guilty of fraud or misconduct, and to subject him to the punishment that might, perhaps, follow such an adjudication. The referee was right in allowing Schlang his commissions.

II. The referee properly disallowed the assignee's claim for rent, clerk hire and gas bills paid whilst the stock was selling at retail. It was proper, however, to allow such expenses as were incurred in preparing the goods for sale at auction. Rule 20 of the Court of Common Pleas, requires that the sale shall be advertised for at least ten days, in one or more newspapers, and that the goods shall be sold in parcels, according to a printed catalogue. The arranging of the goods in parcels and the preparation of the catalogue required time; and it

would not be improper for the assignee to retain possession of the store, and to employ assistants, if the assorting and the cataloguing of the goods could be done better there than in an auction room.

III. It was proper to allow the assignee the amount payable to his counsel for services in the replevin suits. It was the duty of the assignee to defend the trust, and to preserve the assigned estate from attack (*Noyes* v. *Blakeman*, 6 N. Y. 579, 584).

IV. Where difficult questions arise, an assignee may lawfully employ counsel to advise him in relation to the administration of the estate, and charge the expenses to the trust fund (*Jewett* v. *Woodward*, 1 Edw. Ch. 200 ; *Levy's Accounting*, 1 Abb. N. C. 177 ; Bishop on Insolvent Debtors, § 378).

The exceptioner has not pointed out that in the $458.36 allowed to the assignee as payments to his counsel any sums were included that were not properly chargeable against the estate.

V. It is said that Schlang should not be allowed the fees paid to the referee on this accounting. If Schlang had been removed for misconduct, or if he had capriciously refused longer to serve, the objection would be a good one. The rule is that if a trustee has good ground for retiring, the costs of the suit by which he seeks and obtains a discharge from his trusteeship, will be paid out of the trust fund (Adams on Equity, marg. p. 39, citing *Coventry* v. *Coventry*, 1 Keen, 758 ; *Greenwood* v. *Wakeford*, 1 Beav. 581 ; *Forshaw* v. *Higginson*, 20 Beav. 486 ; *Gardner* v. *Doones*, 22 Beav. 395 ; *Carter* v. *Seabright*, 26 Beav. 376 ; Hill on Trustees, marg. p. 189).

In this case, Schlang, without any fault on his part, was called on to vacate his office, and he stands, therefore, in the position of one who voluntarily, and for good cause, seeks to be relieved from his trusteeship. There was no impropriety in his accepting the assigneeship, nor has he since done anything that can be called misconduct. The delicacy of his position occasioned his removal. As was said by the Court of Appeals in the Burtnett case, the words "misconduct" and "incompetency," as used in the Assignment Act, have no

technical meaning, and were intended to embrace every con-
ceivable cause which a court of equity might deem adequate
for the removal of a trustee. I repeat that I think Mr. Schlang
is, with respect to the expenses of his accounting, to be treated
like a trustee, who, for good reason, and of his own accord,
asks leave to lay down his office.

VI. It is next objected that Mr. Schlang should not be
allowed the payment made of a gas bill for $20.50 for the per-
iod beginning December 23rd, 1878, and ending January 23rd,
1879. This bill was, it appears, contracted by the assignor,
and was a claim against the assigned estate. Not being a pre-
ferred claim, only a pro rata portion should have been paid.
The gas company must share with the other creditors of the
non-preferred class; and Mr. Schlang must account for and pay
over to his successor, the amount paid to the company. He
will, on the final accounting of the substituted assignee, be en-
titled to reclaim the amount which, on a pro rata payment to
creditors of the non-preferred class, would be coming to the
Gas Company.

VII. The exception to the allowance of $150 to the as-
signee as the fee of his attorney for drawing off the account,
and attending at the accounting, should be sustained. The
case of *Burtis* v. *Dodge* (1 Barb. Ch. 91), suggests the true
rule. We have not construed section 26 of the Assignment
Act as giving us the right arbitrarily to allow costs and coun-
sel fees, limited only by the courts' discretion (see *Matter
of Risley, ante, p.* 44).

Though the accounting is not a special proceeding, and is
not governed by Laws of 1854, c. 270, and though we are
not controlled by any statute fixing the amount of costs and
counsel fees, there is so much force in the suggestions of the
Chancellor in *Halsey* v. *Van Amringe* (6 Paige, 17, 18, 19),
that I am in favor of adopting his reasoning, and of holding
that the costs to be allowed on an accounting are such costs as
would be awarded on the trial of an issue of fact in a civil
action; that is to say, for proceedings after notice and before
trial, and the usual trial fee. There must be either an unlimi-
ted discretion in awarding costs and counsel fees, or else a

settled rate conformable to some fixed standard. The only standard known to me is the bill of costs established by the Code, and to that I think we must conform (see 55 N. Y. 146).

The allowance of $150 should be reduced to $15 for proceedings after notice and before trial; for each party served with notice to appear before the referee, not exceeding ten, $2, and for each party so served in excess of ten in number, $1; for trial of an issue of fact, $30; if more than two days occupied, in addition $10.

If the words "reasonable counsel fees" can be construed to mean an extra allowance, I know of no basis upon which such an allowance could, in this case, be computed.

The foregoing observations dispose of all the exceptions filed to the referee's report. The argument of the counsel for the exceptioners is, in some respects, broader than the exceptions, but the court cannot pass upon matters as to which no exceptions have been filed, and which one counsel chooses to argue without notice to his adversary.

With the modifications suggested in this opinion, the report of the referee will be confirmed.

Application granted.