In the Matter of the Assignment of Otto Schaller to Edgar Pool for the Benefit of Creditors.

[Special Term.]

(Decided June 28th, 1880.)

After the execution of an assignment for the benefit of creditors, the assignor obtained, by fraudulent representations, certain notes, which he transferred to some preferred creditors, taking from them releases of their preferred debts. The maker of some of the notes, who was compelled to pay them, applied to be subrogated to the rights of the preferred creditors whose claims had thus been paid. *Held,* that he was not entitled to subrogation.

Matter of Schaller.

To obtain such a release from a creditor who was preferred in part, the assignor represented that, to promote a compromise with the creditors, the assignee would surrender to him the assigned property, if the creditors would release the assignee from liability ; whereupon, and in consideration of certain notes, an instrument was executed and delivered by such creditor to the assignor, which was supposed by the creditor to be merely such a release to the assignee, but was in form a general release to the assignor. No compromise was made ; the notes were not paid, and judgments were recovered on them, but remained unsatisfied. The original claim was presented to the assignee, but was rejected by him, by reason of the release ; and pending a reference thereon, the release was cancelled in an action brought for that purpose. *Held*, that on proof of these facts before the referee, the claim was properly allowed.

An assignee for the benefit of creditors is not acting in hostility to the assignment when he refuses to pay a preferred claim on the ground that it has been released or extinguished since the assignment was executed.

The report of a referee upon an accounting by an assignee for the benefit of creditors cannot be confirmed without proof of service, upon the creditors, of notice to present claims, and of the citation to appear on the accounting ; and where the citation has not been served, the referee has not power to cure the irregularity. Service of the citation by mail is not sufficient unless authorized by the court.

A referee acting under the Assignment Act will be allowed the same compensation as a referee in an action ; his fees will be taxed by the clerk ; and the clerk's taxation may be reviewed by the court.

A referee who is compelled to audit the accounts as well as to take testimony, will be allowed for the time necessarily spent in auditing.

An attorney who is employed to act as the general adviser of an assignee for the benefit of creditors is not entitled to charge a retaining fee in suits that he is called on to conduct in the course of his regular duties. A retaining fee is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other, and receiving pay from him.

APPLICATION to confirm the report of a referee upon a disputed claim under a general assignment for the benefit of creditors.

The claim was made by John S. Hulin, as the maker of certain promissory notes alleged to have been obtained from him by the assignor by false representations, and transferred to preferred creditors in consideration of their release of their

claims. Hulin having been compelled to pay the notes, and his claim therefor being disputed by the assignee, a reference was ordered, upon which the referee reported in favor of allowing the claim, and application was made to confirm the report.

*George B. Ashley,* for John S. Hulin, the creditor.

*Thomas F. Wentworth,* for the assignee.

Van Hoesen, J.—I have not changed the views I expressed upon the argument, though I understand the great hardship of the case. Hulin got no more than Schaller had to convey, and that was nothing at all. Schaller's transaction amounted simply to a payment of the preferred creditors, and he obtained from them a release. He merely paid them. He bought nothing, and acquired nothing by purchase from them. By the terms of the assignment, what is left after paying the preferred creditors, goes to the non-preferred creditors. The payment of the preferred creditors with the notes which Schaller obtained by fraud and false pretenses from Hulin, discharged the assigned estate from the claims of the creditors so paid, and left it to be distributed among the non-preferred creditors. There is no way in which Hulin can be put in the shoes of the preferred creditors. He was a stranger to the transaction by which they were paid, though Schaller, in making the payments, wrongfully and fraudulently used the notes which he had lent him. Hulin's claim is against Schaller personally, not against the assigned estate.

The report of the referee is overruled.

Application denied.

Another claim was made under the same assignment by Milo W. Pember, one of the creditors of the assignor, a portion of whose claim had been preferred in the assignment. Soon after the making of the assignment, the assignor, Schaller, being then engaged in negotiations with the creditors for a composition, represented to Pember that, in order to enable

him to carry out such composition, the assignee would surrender to Schaller all the property in the possession of the assignee under the assignment, provided the creditors would release the assignee from all liability in the matter; whereupon Pember, supposing that he was giving such a release, executed and delivered to Schaller a general release of the latter, the consideration of which was stated therein as being several notes which represented or appeared to be intended to represent Schaller's indebtedness to Pember. The notes not having been paid when due, an action was brought by Pember against Schaller upon the original indebtedness, in which the complaint was afterwards amended so as to set forth the notes, and judgment was recovered upon them, but was not satisfied. Pember's claim being disputed by the referee, on the ground of the release, was referred; and, pending the reference, a judgment cancelling the release was obtained in an action brought by Pember for that purpose. Upon proof of the foregoing facts the referee reported in favor of allowing the claim, and application was made to confirm the report.

At the same time an application was heard to confirm the report of the same referee upon the accounting by the assignee. Objections were made to the account on the ground that the charges by the assignee for professional services of his counsel, especially in contesting the claim of Pember, and charges for the services of a book-keeper, were excessive; and on other grounds which are stated in the following opinion, rendered August 31st, 1881.

*Chauncey B. Ripley* and *Samuel Jones*, for Milo W. Pember, the creditor.

*George B. Ashley*, for John S. Hulin, and *George W. Galinger*, for Reynolds, other creditors.

*Thomas F. Wentworth*, for the assignee.

VAN BRUNT, J.—The irregularity in the proceedings of

Matter of Schaller.

the assignee in reference to the accounting makes it impossible to confirm the referee's report.

There is no affidavit of service of the notice to creditors to produce their claims before the assignee, as prescribed by the rules of this court.

It appears affirmatively that the citation was not served upon certain creditors who had filed claims with the assignee. It is true that the referee upon the reference has endeavored to cure this irregularity, but I find no authority in the statute authorizing the referee to usurp the powers of the court. These creditors had the right to be heard upon the application for a reference, and neither the assignee or any other person or court can deprive them of that right. It would seem, therefore, that the order of reference to take and state the accounts was entirely irregular and conferred no authority upon the referee.

It further appears from the papers which have been submitted that the citation was served upon the creditors whom the assignee claims to have served by mail, and it does not appear that there was any authorization by the court that the service should be made in that way. The referee's report as to the claim of Milo W. Pember seems to me entirely correct, and should be confirmed.

For these reasons the referee's report cannot be confirmed, and for these, if for no other.

Upon a subsequent referee's report on the accounts of the assignee, the following opinion was rendered January 9th, 1882.

VAN HOESEN, J.—The fees of the referee are to be taxed by the clerk. If there be dissatisfaction with the taxation made by him, an appeal lies to the court. Though the statute does not prescribe the fees payable to a referee in an assignment proceeding, there has been a general understanding that the same rate of fees shall be allowed as in an ordinary action. In these assignment matters, one thing must be borne in mind—that the duties of a referee do not consist merely in presiding at the examination of witnesses. The most arduous

and vexatious of his duties is the auditing and examination of the accounts and vouchers in those cases in which there is a serious contest over the allowance of disputed claims. For these services, though they are not performed under the eye of the attorneys, the referee is to be paid; and in taxing his fees, the clerk is bound to ascertain, by the affidavit of the referee and such other testimony as may be offered, how much time and how much labor the referee has devoted to the particular case. Time necessarily spent in auditing and examining accounts is "time spent in the business of the reference" (§ 3296). If an extortionate bill is presented, the court can always protect the estate.

From my examination of the testimony, it appears to me that Mr. Todd and Mr. Galinger do not state correctly the part taken by the assignee in resisting the payment of certain claims. The assignee did not dispute the right of the preferred creditors to be paid in the manner prescribed by the assignment. He did not attempt to defeat the execution of the assignment under which he acted, but he did contend that events had taken place since the execution of the assignment which entirely altered the position of those who held the preferred demands. He said in effect: "Mr. Pember, you have released your claim, and that claim is, therefore, no longer a claim against the estate." With respect to the claim of John Schaller, the assignee likewise contended that it had ceased to be entitled to the preference which it had by virtue of the assignment. This was not to dispute the validity of the assignment. It was analogous to the action of a tenant, who, though he could not dispute his landlord's title, could say that his landlord had been paid. The fees of counsel employed to conduct the litigation arising out of those claims should be allowed to the assignee. He was protecting his trust in contesting those claims, though it turned out that the court did not sustain the views of his counsel as to the law applicable to those cases.

The retainer in the Pember matter ought not, in my opinion, to be allowed. The attorney was regularly employed by the assignee, in the business of the assignment, and, there-

Matter of Schaller.

fore, was not in a position to claim a retainer. The theory of a retainer is thus stated by the Supreme Court of Maine, in *McLellan* v. *Hayford* (24 Alb. L. J. 536): "The proper scope and application of the right to charge retainers is to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other, and receiving pay from him." I do not mean to say that the law of Maine with respect to the right to charge retainers is the law of New York, but I do say that the Supreme Court of Maine correctly stated the principle upon which retainers are allowed. An attorney who is employed by the assignee as his general adviser in all matters relating to the assignment, puts himself in such a position by becoming such general adviser that he cannot ask a retainer in such suits as he is called on to try in the course of his regular duties. He is to be paid, of course, but he is not to be allowed anything as a retainer.

In a single case, a fee of twenty-five dollars for bringing a suit in the Marine Court might not be too large, but where a large number of suits are to be brought, for the purpose of winding up an insolvent estate, and where all those suits are placed in the hands of one man, or of one firm, I think a smaller rate of compensation sufficient, especially where all the actions are settled without a trial. I think ten dollars in every case, instead of twenty-five dollars, a sufficient compensation; and the bill of the attorneys should be reduced accordingly.

The compensation to Hopkins, the book-keeper, does not seem to me extravagant, though it was large enough. Perhaps, if the data had been given me, I might know better than I know now what the charge of Hopkins ought really to have been. With the light that I have, I can do no more than allow the charge to stand.

The report of the referee, as it will be modified by the foregoing suggestions, will be confirmed.

Application granted.