1. ASSIGNMENT FOR BENEFIT OF CREDITORS—SCHEDULE—CONCLUSIVENESS.
   Where schedules and inventory in assignment for benefit of creditors
   were filed by the assignor, and not by the assignee, they did not charge
   the latter with the actual value of the estate as stated therein.

2. SAME—ATTORNEY'S FEE.
   No allowance should be made to an assignee for creditors for services
   of an attorney on motion of creditor for compulsory accounting of assignee,
   made after the time when, under the statute, the accounting should have
   been made.

3. SAME.
   A charge, by an attorney of an assignee, of $50, in enforcing a claim of
   $90, is disproportionate to the value of the services, where nothing was

realized on the claim, which was subsequently sold at auction by order of court.

**4. SAME—PREFERENCES—EMPLOYES.**
A salesman on commission is an employé, within the statute granting preferences to employés on assignment by the employer, though the compensation of the employé was measured in part by a share of the profits.

**5. SAME—RENT AFTER ASSIGNMENT.**
Where an assignee for creditors continued to occupy, for storage purposes only, the premises used by the assignor, and it would have been possible for him to secure premises at a much lower rental, and there is no evidence that he did not have the funds to procure such premises, the claim of the landlord should be enforced against the assignee personally, and not against the estate.

**6. SAME—TAXES—PREFERRED CLAIM.**
In distribution of insolvent estates, a claim for personal taxes due by the assignor, with interest, is entitled to preference before all others, after payment of costs and expenses.

In the matter of the accounting of Charles F. Ginsburg, assignee of Henry C. Donaldson. Report of referee confirmed.

Leon B. Ginsburg (William L. Mathot, of counsel), for assignee.

Guggenheimer, Untermyer & Marshall (Bernard M. Cone and John P. East, of counsel), for Howard E. Watkins.

Johnston & Johnston (Campbell E. Locke, of counsel), for Keith and another.

Charles C. Levenson, for preferred creditors.

John Whalen, Corp. Counsel, for city of New York.

GILDERSLEEVE, J.  This is an application for an order confirming the report of a referee taking and stating the account of an assignee, as modified to conform to the exceptions filed by the respective parties interested in the proceeding. The brevity of the referee's report, and the failure to make and state consecutive specific findings of fact and conclusions of law upon many claims and items of the account objected to, render necessary a careful examination of the long record and the voluminous papers which have been filed. Perhaps the most important objection filed to the account was that contained upon certain pages of the testimony, wherein it was sought to charge the assignee with the difference between the value of the estate as actually stated in the inventory filed by the assignor and the amount realized by him upon the auction sale of the assets. Upon this question the referee has briefly passed, by finding that the moneys received by the said assignee from the sale of the property owned by the assignor were all that it was fairly and reasonably worth, and that the sales were made at public auction, and in accordance with the rules and practice of this court. Whatever its legal significance, it is worthy of note that no exception to this finding of the referee upon the issue raised by this fundamental objection was presented by the creditor who made the objection before the referee, and that it is urged upon this motion by one who did not present it upon the accounting proceedings. Although a doubt arises, from the record, as to whether the manner of the sale of the assets was best calculated to secure the largest number of bid-

ders and to realize the largest proceeds from the assigned estate, because of the allotment of the goods for sale without the immediate supervision of the auctioneer who was intrusted therewith, or without consultation with the assignor, who was acquainted with the value thereof, and although, perhaps, the specific catalogue of the record of purchasers contemplated by the rules of this court was not presented, yet such evidence as might properly be held to support the contention of the objecting creditor must be inferentially derived from the examination and from the cross-examination of the auctioneer and assignee. The fact that no direct evidence was adduced in support of that contention to surcharge the assignee with the difference between the inventory value and the realized amount, and the fact that the schedules and inventory were filed by the assignor, and not by the assignee, and did not, therefore, have the legal effect to charge the latter with the actual value of the estate as stated therein, coupled with the findings of the referee upon this issue, warrant this court in believing, with the referee, that the assignee has on this point successfully sustained the burden which his affirmative position imposed upon him in refusing to interfere with the findings of the referee, and render them conclusive on this issue. The same conclusion must also be reached with reference to the payment to the auctioneer for his services in selling the assets of the estate, and also with reference to the payment to the employés of the assignee engaged for the preservation of the estate, which, though not made the subject of controversy on the report, were raised upon the accounting proceedings, and may be involved in the contention concerning the manner of the sale of the assets, so far as the liability of the assignee is affected thereby.

Objection was raised upon the accounting proceedings to the allowance of the payments made by the assignee to his attorneys in the administration of the estate, with the result that the referee reduced the same by $400. To this finding, strenuous objection is urged upon this motion by the assignee. From a careful examination of the record, I can find no reason that warrants any inference with the conclusion of the referee upon this point. An attorney stands in the same relation to an assignee as any other agent or servant employed by him in the administration of his trust, and the allowance of payments to the attorney for services rendered by him, and the reasonableness thereof, must be determined by the tests of the necessity, propriety, and a fair and reasonable value, of those services, and the benefits conferred by them upon the trust estate. "In the ordinary performance of such duties as an assignee for the benefit of creditors assumes, he, at best, engages for his own best personal competency to perform them; and he cannot involve the estate in the expense of employing counsel to advise him as to duties he has thus assumed, unless it were shown that some unusual complications existed, which rendered it reasonable and proper that the professional advice should be called in, to extricate or alleviate the affairs of the assigned estate from some anticipated complications. No such convenient rule exists as enables an assignee, at the expense of the estate, to retain a lawyer as one among other employés

that he may necessarily employ for the purpose of affording him general advice as to his conduct in his office as trustee. The special exigency and reasonable necessity for the incurring of any such expenses in the execution of the trust must in all cases be shown." In re Levy's Accounting, 1 Abb. N. C. 182. Thus, an assignee for the benefit of creditors will not be allowed counsel fees paid for the preparing of schedules, or for general advice and consultations. In re Wolff, 13 Daly, 481, affirmed in 102 N. Y. 741; In re Ludeke, 22 Misc. Rep. 676, 50 N. Y. Supp. 952. In Re Johnson, 10 Daly, 123, it was held that no allowance would be made for "charges of an attorney for services which the assignee was bound to render himself,—such as preparing the inventory and schedules, advertising, attending the auction sale, etc.,—but only for the preparation of the formal papers that have to be presented to the court in the different stages of the proceedings, as for preparing the order, etc., to advertise for claims, the citation to creditors, the papers requisite on the final accounting, and the decree of discharge"; and these were declared to be "mere formal papers, which do not require either much labor or any great professional skill in the preparation, involving little less than a due observance of the statute and the rules of the court." Although it has been held that an attorney who is employed by the assignee as his general adviser in all matters relating to the assignment puts himself in such a position, by becoming such, that he cannot ask a retainer in the suits which he is called on to try in the course of his regular duties, and although he cannot accept a specific retainer therefor (In re Schaller, 10 Daly, 57), yet, where difficult questions arise, an assignee may lawfully employ counsel to advise him in relation to the administration of the estate, and charge the expenses to the trust fund (Jewett v. Woodward, 1 Edw. Ch. 200; In re Levy's Accounting, 1 Abb. N. C. 177); and there is no doubt that he should be paid therefor, nor of the propriety of an allowance to him of amounts paid to his attorney to defend the trust, and to preserve the assigned estate from attack (In re Rauth, 10 Daly, 52–55; Noyes v. Blakeman, 6 N. Y. 579, 584). On the other hand, an assignee will not be allowed for payments to his counsel for litigations in which he involved himself by continuing the business of the assignor, nor for resisting applications by preferred creditors for payment before his accounting. In re Van Horn, 10 Daly, 131. In this proceeding, the services of the attorneys for which the charges objected to were made, consisted of those in connection with the proceedings directed by the assignment act, in opposing the enforcement of claim of ownership of some of the assets of the assigned estate, and, therefore, in hostility to the trust, in resisting an application for the payment of a preferred claim, in opposing the motion for a compulsory accounting, and in defending an action against the assignee personally for the value of the use and occupation of premises subsequent to the assignment. With reference to the formal matters, compliance with which is imposed upon the assignee by the assignment act, and for which he may properly make reasonable payment (In re Johnson, above cited), I think that a proper valuation of the same was arrived

at by the referee. In the case of the assertion of the claim of ownership to part of the assets of the estate, and of the opposition thereto by the assignee, it seems to me improper that any amount other than that which was found by the referee should be allowed the assignee; for it is evident from the record that the assignee knew of the existence of the claim, the probability of its successful assertion, and the amount involved was not much greater than the value of the services fixed by the attorney, and no extensive services were rendered thereon, nor was any benefit conferred by such services upon the assigned estate, other than the avoidance of costs, because the case was dismissed upon the pleadings in favor of the plaintiff, who was awarded the portion of the assets to which he had made claim.

Much of the record is devoted to the enumeration of the services rendered upon the motion of a creditor for the compulsory accounting of the assignee, to justify the charge which has been made herein. It is difficult to find any valid reason why any allowance should be made therefor, for the application was made by the creditor after the time, in the manner, and within the authority of the statute. The duty of accounting was then incumbent upon the assignee, unless some other reason to the contrary connected with the administration of the estate existed. That this was not the case here was evident by the determination of the special term, justifying the application and disapproving of the opposition thereto, and directing the accounting; and it therefore seems improper to make, as a basis for the charges which are here made, services rendered to the assignee in resisting the provisions of a duty which the statute generally imposed upon him, and which the decision of the special term specifically declared he should perform.

The other services above referred to were made necessary by the continued occupation of the premises of the assignor by the assignee subsequent to the assignment,—were all rendered in actions brought by the landlords to enforce the liability for the value thereof against the assignee personally. Upon the record on this issue, and under the authority above cited upon this particular point, it is difficult to see why any interference should be made with the valuation of the referee.

There were also some charges made for services rendered in collecting claims due the estate, particularly the Kilpatrick claim, in which about $90 was involved, and for services in connection with which a charge of $50 is made. It is clearly evident that this charge is disproportionate to the fair and reasonable value of the services rendered in connection with the said claim, which view is confirmed by the fact that no benefit was ultimately conferred upon the assigned estate by those services, because nothing was realized upon the claim, which was subsequently sold at public auction, under order of the court.

For the above reasons, and in view of the authorities above cited, I think that the valuations of the referee for the services rendered in this proceeding must be sustained, and that the exceptions thereto must be overruled, the motion for an extra allowance denied, and

the attorneys for the assignee left to the collection of their taxable costs.

The greatest difficulty is presented in connection with the issues raised concerning the claims of Watkins for a preference as an employé of the assignor at the time of the assignment, and of Keith and another, as executrices, etc., for the value of the use and occupation of premises by the assignee subsequent to the assignment. Upon the first point, I think that the facts disclosed by the record concerning the nature and extent of the employment of the claimant, and the recent liberal construction by our courts of the words of the statute awarding preference in these proceedings to employés, justify a confirmation of the findings of the referee thereon. The situation here is very similar to that in the case of Palmer v. Van Santvoord, 17 App. Div. 194, 45 N. Y. Supp. 354, affirmed in 153 N. Y. 612, 47 N. E. 915, where, although the particular point was not involved, the statute was under consideration, and it was held (giving the language of the act a fair and reasonable construction) that the respondent, who was employed to sell machines, as well as pack and unpack them, bolt them together, repair them, and do all the necessary work, and put them in working order, was deemed an employé, operative, or laborer, within its provisions, and as such entitled to its protection. See, also, Brown v. Fence Co., 52 Hun, 151, 5 N. Y. Supp. 95; People v. Beveridge Brewing Co., 91 Hun, 313, 36 N. Y. Supp. 525; Mayer v. Stern, 22 App. Div. 628, 47 N. Y. Supp. 965. The cases of Mayer v. Stern, 22 App. Div. 628, 47 N. Y. Supp. 965, Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, and In re Sawyer (Com. Pl.) 29 N. Y. Supp. 1097, may also properly be regarded as authorities for the doctrine that a salesman on commission is an employé, under the statute, and as such entitled to a preference, even though his compensation was measured in part by a share of the profits. The case of People v. Remington, 45 Hun, 329, affirmed by the court of appeals, might seem to cast some doubt upon this conclusion; yet, in view of the stress laid in that case upon the presence of the word "wages" in the statute, and of the effect of the exclusion of the words "operatives" and "laborers" in construing the general word "employee," which is the only word used in the statute awarding preferences in the distribution of assigned estates, in view of the fact that the decision in that case was rendered under the receivership law, with its more restricted language, and in view of the later strong dictum of the court of appeals in the case of Palmer v. Van Santvoord, above cited, it would seem that the statement of the law in that case, though not essential to the decision thereof, should be followed here. There is nothing in the record to justify interference with the referee's allowance of the amount of the preferred claim asserted by the employé, which differed very much from that asserted upon the accounting proceedings by him, and it therefore must be sustained.

The claim asserted by Keith and another as executrices, etc., was, despite the great doubts concerning the nature thereof in the earlier part of the record, evidently for the use and occupation by the assignee subsequent to the assignment of the premises previously ten-

anted by the assignor. There is sharp controversy in the record as to the existence of an agreement between the landlord and the assignee for the use and occupation of the premises, and of the nature and extent and the terms thereof. The extent of the occupation of the premises by the assignee, which is material because of the basis upon which the claim was finally founded, was also the subject of much controversy upon the accounting. In view of the failure of the referee to make specific findings of fact and conclusions of law upon the specific question of the absence or existence of the express agreement for the use and occupation of the premises, this enhances the difficulty of a determination of an allowance of this claim. It at least appears, however, from the record, and as stated in the report, that the assignee, subsequent to the assignment, took possession of the premises previously occupied by the assignor, with the knowledge and consent of the landlords, who were also acquainted with the existence of the trust, and that he subsequently occupied a part of the premises to which the landlords had at all times actual access for two months subsequent to the assignment. The theory upon which the claim was allowed, and upon which a preference was awarded thereto, was either, evidently, that it was one of the expenses of the administration of the trust, directed to be paid by the deed of assignment, or that the claimant thereon was subrogated to any rights which the assignee acquired by reason of his expenditures or liabilities incurred for the benefit of the estate. It was, if anything, it must be conceded, an expense incurred in the administration of the assigned estate by the assignee subsequent to the assignment, for which the assignee made no payment, and for which he asked no allowance in his account, and which he strenuously opposes on this motion. The conclusion of the referee seems inconsistent with the statement of the law made in Noyes v. Blakeman, 6 N. Y. 577, and in Austin v. Munro, 47 N. Y. 360, which has been consistently followed by the subsequent decisions of the highest court of this state. "Whatever lien, at law or in equity, a trustee may have upon trust property in his possession, for expenses incurred in its care and management, it is perfectly settled that persons who render services for the trust estate upon the employment of the trustee have no such lien for services." Noyes v. Blakeman, 6 N. Y. 577. It is an assignee's duty to protect, preserve, and convert the assigned property, and, without neglecting his trust duties, he may engage help, incur liability, and make proper, reasonable, and necessary expenditures for that purpose, for which he will be allowed on his accounting. "It is undoubtedly true, as a general rule, that, where a trustee employs agents in the execution of his trust, they are to look to him individually, and have no lien upon the trust fund for their compensation. If he is in funds, he is bound to protect the estate, in which case he has no lien, and consequently cannot assign any, having none to assign." Noyes v. Blakeman, 6 N. Y. 580. To this there is an exception. "Being without funds, and a necessity arising for expenditures in order to protect the estate from spoliation, he may either make them himself, and be allowed for them in the passing of his accounts, or may en-

gage others to do it upon the credit of the fund, reserving to himself the same management and direction as in any other case, and thus avoid the objection that he delegated his trust." Noyes v. Blakeman, 6 N. Y. 580. See Bish. Insolv. (2d Ed.) p. 372, who adds to the above language the words, "in which case he shall bind the trust property by his contract." The present case does not seem to fall within this exception, because it clearly appears from the record that the premises were necessarily used really for storage purposes only, and it would have been possible for, and it was within the contemplation of, the assignee to secure premises for the storage and preservation of the property of the assigned estate at a much lower rental than is here sought to be charged, within a few doors of the premises occupied by him; and there is no direct evidence that he did not have funds, in the shape of cash on hand, the proceeds of accounts collected by him or sales made by him, so as to bind the estate for the expenditures necessary for its preservation.

The rule laid down in Austin v. Munro, 47 N. Y. 360, would demand that in this case the claimants should, as they actually did, look to the assignee personally for compensation for the use and occupation by him of their premises. That rule has been frequently applied to the case of executors and administrators. Thus, in Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705 (page 591, 113 N. Y., and page 706, 21 N. E.), it was declared that:

"It is the settled doctrine of the courts of common law that a debt contracted by an executor after the death of his testator, although contracted by him as executor, binds him individually, and does not bind the estate which he represents, notwithstanding it may have been contracted for the benefit of the estate."

And the cases where such debts and expenditures have been allowed against the estate have been those where the testator binds the general assets for all the debts of the business to be carried on after his death. See Watch Co. v. Hodenpyl, 135 N. Y. 434, 32 N. E. 239.

The case of Thomson v. Smith, 64 N. H. 412, 13 Atl. 639, states that:

"An administrator cannot bind the estate by an executory contract, nor create a liability not founded upon the contract or obligation of his intestate. But relief may, in proper case, be given in equity, by applying funds of the estate to the discharge of an obligation entered into, in good faith, by the administrator on behalf of the estate, no other remedy being open to the plaintiff."

The claimants herein, however, have successfully asserted their claim for the value of the use and occupation of the premises by the assignee after the assignment, against him personally, and have recovered a judgment therefor. If any equitable considerations exist for the allowance thereof against the trust fund of the estate herein, they must fairly be regarded as those arising from the condition pointed out in Noyes v. Blakeman, supra, and above stated, and which, it is shown above, do not exist. It seems to me, therefore, for the above reasons, and in view of the authorities already and below cited, that claimants must be referred, as they have them-

selves chosen, to their remedy against the assignee for the use and occupation, by his own responsibility, of their premises subsequent to the assignment, and that the claim presented therefor should not be allowed as a general or preferred claim against the estate assigned herein. See Ferrin v. Myrick, 41 N. Y. 315, 322; New v. Nicoll, 73 N. Y. 127, 131; Barry v. Lambert, 98 N. Y. 309; Caulkins v. Bolton, 98 N. Y. 516; Schmittler v. Simon, 101 N. Y. 558, 5 N. E. 452; Blood v. Kane, 130 N. Y. 520, 29 N. E. 994; Trust Co. v. Stanton, 139 N. Y. 531, 533, 34 N. E. 1098.

Exception is also made to the allowance by the referee of the claim of the city of New York to personal taxes due to it from the assignor, with interest, for his defaults in payment within the statutory time. It seems to be the settled law of this state—and has been accordingly the uniform practice of this court—to award a preference to such claims over all others in the distribution of insolvent estates, and the exception to the allowance of said claim and of a preference therefor must be overruled; and the said claim is entitled to a preference in payment before all others presented herein, after the deduction from the balance in the hands of the assignee of the costs and expenses of. this accounting. See In re Columbian Ins. Co., 3 Abb. Dec. 239; Central Trust Co. v. New York C. & N. R. Co., 110 N. Y. 250, 258, 18 N. E. 92; In re Welsbach Incandescent Light Co., (Sup.) 59 N. Y. Supp. 1006; People v. Manhattan Trust Co., Id.; In re Blight, Id.

For the foregoing reasons the report of the referee, with the exception of the allowance of the claim of Keith et al. as executrices, and of a preference therefor, should be, and is hereby, confirmed. Ordered accordingly.