In the Matter of the Assignment of MORRIS WOLFF *et al.*, to GUSTAV GOMPRECHT (WILLIAM A. HARDING substituted as Assignee), for the Benefit of Creditors.

(Decided May 3rd, 1886).

Upon the accounting of an assignee under a general assignment for benefit of creditors, the actual value of the goods assigned as stated in the inventory, is *prima facie* the valuation of such goods with which the assignee is chargeable. The burden is on him to show that the actual value is less, or upon attacking creditors to show that it is greater; the

character and amount of evidence to overcome the presumption is a question of fact depending upon circumstances and to be determined in each case.

Upon the accounting of an assignee for benefit of creditors who had been removed for misconduct, the evidence produced by him to relieve him from being charged with the inventoried value of the merchandise, consisted of the testimony of the assignors and of three witnesses engaged in the same line of business, who gave no absolute valuations, but mere estimates upon the cost prices, not knowing what these were, based upon a very cursory examination of the stock. The person who prepared the inventory and fixed the valuation, having been employed by the assignee for that purpose, and who was familiar with the stock and had been the buyer for the assignors before the assignment, was not called as a witness. The stock had been transferred in bulk, secretly, and possession thereof delivered by the assignee, the day after the filing of his bond, to a preferred creditor, who was his partner, father-in-law, and bondsman, so that the creditors had no opportunity to contradict the testimony by that of other experts. *Held,* that the assignee was properly charged with the inventory value of the stock.

Commissions may properly be refused to an assignee for benefit of creditors removed for grave misconduct.

An assignee for benefit of creditors may be allowed, upon his accounting, disbursements for counsel fees in actions in which the services of an attorney were necessary; but not for preparing schedules and other instruments, or for general advice and consultations.

APPEAL from an order of this court confirming the report of a referee upon an accounting by an assignee under a general assignment for the benefit of creditors.

On January 7th, 1884, Morris Wolff and Martin Kahn, co-partners, under the firm name of M. Wolff & Co., made an assignment for the benefit of their creditors to Gustav Gomprecht, a brother-in-law of said Morris Wolff. The assignment contained preferences aggregating $83,469.05; one of the preferred claims was that of L. Schoolherr, who was the father-in-law of said Martin Wolff and of said Gustav Gomprecht, and a partner in business of the latter, for $22,621.39. The claim of Mr. Schoolherr was based upon promissory notes, $20,517.07 of which were dated in the month preceding the assignment, and which were given at four months. Another of said preferred claims was that of Mrs. Sarah Wolff, the wife of said Morris Wolff, for $11,921.68, which was also based on promissory notes, all

dated within the four months immediately preceding the assignment. The assignee took possession of the stock and fixtures on hand immediately upon the execution of the assignment. The assignors, with the assistance of one Van Duzer, who had previously been in their service as buyer, prepared an inventory and schedules of the assigned estate and verified and filed them on the 23d day of January, 1884. In such inventory, the stock on hand at the time of the assignment was placed at a nominal value of $44,563.16, and at an actual value of $28,755.99. The assignee filed his bond on January 24th, 1884, his father-in-law, a partner and preferred creditor (Schoolherr), being one of his sureties. Shortly before the filing of the bond, at the request or on suggestion of the assignee, three gentlemen engaged in the same line of business as the assignors made some examination of the stock, and one of them offered to purchase the same at $33\frac{1}{3}$ per cent. of the cost price, and each of the other two 40 per cent. of the cost price. The cost price was the amount given in the inventory as the nominal value. The day after the bond was filed, the 'assignee, without any notice to creditors, and without any publication or advertisement inviting proposals of any kind, sold and delivered the stock in bulk to said Schoolherr for 50 per cent. of the cost price in cash, being $22,326.58, or, as appears by the assignee's account, $17.12 less than the amount due Mr. Schoolherr on his preferred claim. On the same day the assignee paid Mr. Schoolherr the amount of his preferred claim, and out of moneys collected by him on outstanding accounts he subsequently paid Mrs. Wolff's preferred claim and a part of the claim which was third in order of preference. Soon after the transfer of the stock to Mr. Schoolherr, that gentleman formed a co-partnership with his daughter, the preferred creditor, Mrs. Wolff, turned over to it the stock so bought by him, and the new firm, under the name of Wolff & Co. carried on business at the old stand, the old sign " M. Wolff & Co." being retained over the door.

Upon the facts above stated the assignee was removed and a successor appointed, and said removed assignee was

directed to account before a referee. Such accounting has been had; the referee has presented his report, and from the order confirming such report this appeal is taken.

*Blumenstiel & Hirsch*, for the assignee, appellant.

*James Byrne*, for William A. Harding, substituted assignee, respondent.

LARREMORE, Ch. J.—[After stating the facts as above.] —1. In regard to the question what valuation of the goods the assignee is chargeable with, I think it is well settled that the actual value given in the inventory is *prima facie* the amount. The burden is on the assignee to show that the actual value is less, or upon attacking creditors to show that it is greater; the character and amount of evidence to shift this presumption is a question of fact depending upon circumstances and to be determined in each case. On general principles I should say that the presumption of the correctness of the inventory is not so great in insolvent assignments as in proceedings for administration in the Surrogate's Court, because in the latter the inventory is prepared with prescribed formalities by sworn officials; still the presumption does exist here and the burden is upon the party questioning it.

I think the referee has rightly held that the assignee has not in this case produced proper or sufficient evidence to relieve him from being charged with the inventoried value of the merchandise. The assignee employed the person (Mr. Van Duzer) who prepared the inventory and fixed the valuation, and such assignee knew of the estimates therein put upon the goods. Mr. Van Duzer seems to have been the most competent man who could have been selected for this task, as he was familiar with the stock in all its minutiæ, and had been the buyer for the assignors before the assignment. When it was sought to question the correctness of the valuations, the motives of the assignors for changing their minds is obvious, and their testimony under

the circumstances is entitled to little weight. But as the referee very pertinently inquires, why was not Mr. Van Duzer placed upon the stand to ascertain whether his views had been modified or changed?

Under the peculiar circumstances the failure to call Mr. Van Duzer was very significant. The testimony of the three outside witnesses is intrinsically of little importance. They give not absolute valuations, but off-hand estimates upon the cost prices, whatever these may have been, and not knowing what they were. Moreover, their examination of the stock was very cursory and occupied but little time in proportion to the quantity of goods. It would be extremely inequitable to allow the loose statements of these men to shift the presumption in favor of the creditors, because the stock was transferred in bulk secretly, and possession thereof delivered to Schoolherr, the assignee's partner, father-in-law and bondsman, the day after the filing of the bond, and therefore the creditors had no opportunity to contradict such testimony by that of experts of equal or greater experience. Considering the admitted facts and the family relationship of all the parties, the testimony of these witnesses has the appearance of having been introduced as a cover for a voluntary transfer of all tangible property of the firm in fraud of its creditors.

The referee did not err in charging the assignee with the inventoried value of the stock.

2. The refusal to allow commissions was correct. This assignee was guilty of grave misconduct.

There is no analogy between this case and *Matter of Rauth* (10 Daly 52). In the latter proceeding the assignee was removed, not for anything he had done, but because on account of his peculiar relationship it was feared he might be unfaithful to his trust. The ground of Gomprecht's removal was misconduct actually committed.

3. The referee in his original and supplemental reports correctly disposes of the question of counsel fees under the well established practice of this court (*Levy's Accounting*, 1 Abb. N. C. 182; *In re Johnson*, 10 Daly 127). He has

allowed the assignee counsel fees in two collection suits in which, if they were to be brought, the services of an attorney were of course necessary, and has disallowed the claim for preparing schedules and other instruments, and for general advice and consultations.

4. The claims of the removed assignee for an allowance upon this accounting, and for the expense of printing papers upon the appeal from the order removing him, were properly denied, for the reason stated in the referee's opinion.

The order confirming the referee's report should be affirmed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Order affirmed.