In the Matter of the Final Accounting of SAMUEL P. HYMAN, as Assignee for the Benefit of Creditors of J. S. COHEN & Co.

(Decided January 3d, 1888.)

The account and schedules of an assignee of a manufacturing business, verified by his oath, stated that he had paid a dividend of 32 per cent. to the creditors. On the accounting it appeared that, as he purchased more than one-fourth of such claims (held by foreign creditors), at 25 per cent., having them transferred to persons in his employ, he or the assignors secured the difference of 7 per cent. *Held*, that such claims should be allowed, but only to the amount that the assignee had paid for them; that for such attempt to cheat the creditors he should be denied commissions; and that he should not be allowed the expenses of continuing the business, the only evidence in support of such claim being his own oath, and it not appearing that the estate was benefited thereby.

APPEAL from a final decree of this court entered on the report of a referee upon a final account of an assignee under an assignment for benefit of creditors and exceptions thereto.

The facts are stated in the opinion.

*Blumenstiel & Hirsch*, for the assignee and E. J. King *et al.*, creditors, appellants.

*R. M. Sherman*, for other creditors, respondents.

J. F. DALY, J. — In the account and schedules filed by the assignee he stated that he had paid to certain creditors a dividend of 32 per cent. ; among them were named four foreign creditors whose claims aggregated $19,635.27, whose dividend at 32 per cent., paid as so stated, amounted to $5,283.29. The account and schedules were verified by the oath of the assignee, stating that as to money paid by him to creditors they were correct, and that he did not know of any error, or anything omitted which might in anywise prejudice the right of any person interested in the estate.

This oath, so far as it related to the alleged payment of a dividend of 32 per cent. to the four creditors referred to, was false, and known to the assignee to be false when he made it; for the truth was that he had himself purchased the claims of those creditors for 25 per cent., and had taken an assignment of them to bookkeepers in his employ, and had intended by his false account, false schedules, and false oath, to make the difference of 7 per cent. out of the assigned estate for his own benefit or that of the assignors.

The referee disallowed the whole sum paid by the assignee on the purchase of those claims, on the ground that there was no proof of payment. The court at Special Term confirmed this disallowance, on the ground that the said claims had never been presented and proved. The assignee was allowed full commissions, and his accounts were otherwise substantially allowed as presented, against the objections of contesting creditors, who, as well as the assignee, now appeal; the former from the disallowance of the sums paid by him to the said four creditors; and the latter chiefly from the allowance of commissions and the allowance of the expense of manufacturing and of carrying on the business of the assignors by the assignee, and from the refusal to charge him with the whole actual value of the assets as inventoried without any deduction whatever.

I think that the account should be referred back for further proof. In respect of the appeal of the assignee: it seems that there was no contest in the hearing before the referee as to the validity of the claims of the four foreign creditors, nor as to the actual payment of the 25 per cent. by the assignee. It appeared to be conceded that there were claims and that he had bought them at that figure: the object of the investigation into the transaction being to establish that he had paid no more than 25 per cent., although he had charged 32 per cent. in his account; and the end in view was to make out a case which would require his removal as assignee on account of this fraud. The court refused to remove him at that stage of the proceeding, the final accounting, as there was then no reason

to apprehend loss to the estate. The whole inquiry before the referee on the question of these four foreign claims was conducted on the assumption that they were valid and were bought at 25 cents on the dollar. There was nothing in the objections filed to the account or in those taken upon the examination (the only way to take objections as prescribed by rule 27) to give notice to the assignee of such a charge, and as the claims were bought before the time for proving claims had expired, there was reason for their not appearing in the list of claims proved. Had the proper objection been taken, however, it would have been necessary to prove them, and it will be now if they are challenged.

The appeal by the creditors is well founded. The fraud of which the assignee was guilty in attempting to secure for himself or for the assignors the difference between what he paid for the four claims above referred to and what he charged as such payment in his account, and his false oath to such account, ought to be held sufficient to deprive him of his commissions at least. A more gross attempt to cheat creditors it would be hard to find, and in view of the great number of accountings in this court, and the opportunity for deception and concealment in accounts, schedules, and vouchers, we cannot have it too clearly understood that false swearing to the accounts and schedules, or upon the accounting, is to be taken as the highest evidence of unfaithfulness on the part of the assignee, and to be punished as a gross breach of trust ; and that in every such case the onus is upon him to establish excusable mistake or other fact which would, if he were a witness, tend to relieve him from responsibility (*Warner* v. *Haight*, 62 Barb. 490–4). The rights of creditors demand that any such obstruction as was here placed in the way of their obtaining the fullest information as to the dealings with the trust, shall entail at least the loss of commissions, and, if proper, the deprivation of allowances for the expenses of accounting.

The false oath in this case appears to have been deliberately made with· the design (admitted by the assignee) of

securing a benefit to the assignors at the expense of the creditors. There was no mistake on his part: his intention was to claim the 32 per cent.: he swears to it. Under these circumstances the false swearing of the assignee affects a matter of more importance than his commissions. The claim made by him in his account to be allowed for the expense of manufacturing and carrying on the business of the assignors after the assignment, is based upon the alleged necessity of the expense in order to realize the full value of the assets, and that his management of the estate in that respect was authorized by the creditors. The only evidence in support of this claim is his own oath. No creditor is called to corroborate him, and he is flatly contradicted by one of them whom he charges with giving such authority. It was the duty of the assignee to dispose of the stock by sale for cash at the earliest practicable moment, and not to carry on the business of the assignor. If he does otherwise, it is at the risk of having to bear the expense himself, unless he can prove a benefit therefrom to the estate (*Levy's Accounting*, 1 Abb. N. Cas. 177–185). If his management of the estate in such a case results in a loss, he is to be charged with the full value of the assets, and allowed nothing for the expenses of the business (*Matter of Orsor*, 10 Daly 26; *Matter of Petchell*, Id. 102; *Matter of Marklin*, Id. 122). In this case it would seem that the estate was not benefited by the management of the assignee in this regard. The assignee claims to have realized from the stock more than the inventoried actual value, but this was at an outlay for expense of manufacturing, etc., which gives a net result far below the inventory. Unless the assignee relieves himself by competent proof, he is chargeable with such actual inventory value without deduction for such expenses (*Matter of Wolf*, 13 Daly 481; affirmed in the Court of Appeals, 102 N. Y. 741, without opinion).

The only evidence that these expenses were authorized is the unsupported oath of the assignee, and that is insufficient, it appearing that in taking the oath to his account

he therein knowingly swore falsely to a material matter. Where the false oath is taken with an intentional disregard of truth, the rule must be applied that the whole testimony of the witness is to be disregarded, unless corroborated by other unimpeached evidence (*Pease* v. *Smith*, 61 N. Y. 477). The same observation with respect to the value of the assignee's testimony applies of course to all the matters in which it is unsupported by other evidence.

The final decree should be reversed and the accounts referred to a referee to be appointed by the court, the former referee having been elected to the bench. No costs of this appeal to either party.

LARREMORE, Ch. J., and BOOKSTAVER, J., concurred.

Judgment accordingly.