(97 App. Div. 331.)

### YORK v. SEARLES et al.

(Supreme Court, Appellate Division, Second Department. October 11, 1904.)

1. EQUITABLE RELIEF—CLEAN, HANDS.

    Plaintiff, without disclosing that M. had offered him $25,000 to sell a steel plant at a certain price, represented himself to S. as an expert in the steel business, and entered into negotiations with and was commissioned by S. to negotiate for and secure options on such plant and two others, they to be consolidated, plaintiff to aid the project as an expert engineer, and S. to finance it, and to transfer to plaintiff certain stock for his services in the transaction. The contract for the plant of M. was made at the price which entitled plaintiff to the commission from M. *Held,* that equity would not give plaintiff specific performance of the agreement of S. to convey the stocks to him, because by reason of the concealment of his agreement with M. he did not come into court with clean hands.

Appeal from Special Term.

Action by James E. York against John E. Searles and others. From a judgment dismissing the complaint on the merits after a trial, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Abel E. Blackmar, for appellant.

George W. Schurman, for respondents Searles and Beattys.

Edward J. Patterson, for respondents Simpson and McCabe.

WOODWARD, J. The judgment in this case, which extends no further than to determine that the plaintiff is not entitled, upon the facts proven, to equitable relief, should be affirmed, if for no other reason, than that the plaintiff does not come into court clean-handed in reference to the particular transaction in which he seeks aid. 1 Pomeroy's Equity Jurisprudence, §§ 398–400. The transactions between the plaintiff and the several defendants are various and complex, being closely interrelated; but a careful study of the case convinces us that it presents no facts warranting this court in interfering with the judgment entered.

On the 11th day of February, 1898, York, the plaintiff, was the owner of about $600,000, par value, of the stock of the York Structural Steel Company; the defendants Simpson and McCabe owning the balance of $400,000 of the stock of the company, which was capitalized at $1,000,000. On the date mentioned York sold $300,000 of this stock to the defendant Searles for $50,000, $25,000 of which was paid in the

manner agreed upon, and the remainder was to be paid out of the "first moneys realized from a sale or negotiation of the York patents"; these patents being the property of the York Company. It is not disputed that no moneys have been realized from these patents up to the time of the trial of this action, so that this transaction, aside from showing the general relations of the parties, has little bearing upon the case before us. At the same time the American Universal Mill Company, having a capital stock of $1,000,000 preferred and $4,000,000 common, substantially all owned by the defendants Simpson and McCabe, held other patents on the same general subject as the York patents. Questions of infringement arose, and the two companies had been engaged in negotiations looking to an adjustment of the matter by a consolidation of the two companies and an equitable distribution of the stock of the American Company to the owners of the York Company, the latter going out of business. There was also the Ironton Structural Steel Company, owned substantially by York, Simpson, and McCabe. This corporation had a plant in Minnesota for the manufacture of steel, and owned a license to use the York patents in seven of the western states. Of the $350,000 of the preferred stock of this corporation York owned $55,000, and of the common he was the owner of $99,000 out of a possible $600,000; Simpson and McCabe owning the remainder, and having control of the corporation. York, as a minority stockholder, had brought an action to have an issue of bonds to the amount of $350,000 declared void, and he was also plaintiff in an action for wages alleged to be due him for services to the corporation. It is practically conceded that the Ironton Company was insolvent; that it owed debts to the amount of $350,000, Simpson and McCabe being the principal creditors. With matters in this situation, McCabe entered into a contract with York, under which the latter was to receive a commission of $25,000, provided he should be able to induce the defendant Searles to purchase the Ironton Company's plant at a figure which would take care of the company's indebtedness. Without disclosing this relationship with McCabe, and representing himself to Searles as an expert in the steel business, the plaintiff entered into negotiations with Searles, and was commissioned by the latter to secure options on the Ironton Company's plant, the plants of the West Superior Steel Company and the Duluth Manufacturing Company; the object being to consolidate the three manufacturing companies and to float the securities. There was a general understanding, afterward superseded by a written contract, that York should secure options or contracts to purchase these three companies, and should aid the project, as an expert engineer; that Searles should finance and float the consolidated corporation, and that the promotion profits should be equally divided between them. York secured the options on the West Superior and Duluth plants, and succeeded in selling to Searles the Ironton Company's plant upon the terms named by McCabe in the secret contract, and thus became entitled to his commission of $25,000, a portion of which he has realized by the sale of his claim against McCabe to Simpson for $12,500.

It thus appears that, while York was acting in behalf of the defendant Searles in securing options upon these plants, and representing to the latter that the options thus secured were the best that could be ob-

tained, and were desirable, he was secretly under contract with Mc-Cabe to sell the Ironton Company's plant at an agreed price, and one which should take care of the full indebtedness of that company, for which the plaintiff was in part obligated. Searles knew that York was the owner of a portion of the stock of the Ironton Company, but he did not know that York was interested in earning a commission of $25,000 on the sale of the Ironton Company's plant to him, and, the plaintiff having failed in his duty to Searles (toward whom he was under obligations to act with the utmost good faith) in respect to the very matter out of which the contract which he seeks to have enforced arose, he has forfeited the right to come into a court of equity for relief. "He who comes into a court of equity must come with clean hands." The doctrine is "that the party asking the aid of the court must stand in conscientious relations towards his adversary, that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant. By virtue of this principle, a specific performance will always be refused when the plaintiff has obtained the agreement by sharp and unscrupulous practices, by overreaching, by concealment of important facts even though not actually fraudulent, by trickery, by taking undue advantage of his position, or by any other means which are unconscientious," etc. 1 Pomeroy's Equity Jurisprudence, § 400. The plaintiff admits that Searles was not informed as to the details of steel manufacture. Searles testifies that he relied upon the representations of York in reference to the values and the desirability of the plants to be purchased, and the evidence is conclusive that the plaintiff induced Searles to purchase the Ironton Company's plant at the figure named by McCabe; so that the whole transaction is touched by the vice of this conduct on the part of the plaintiff in dealing with Searles in a confidential relation while in the employ of McCabe, whose interests were antagonistic. These facts were not known to Searles when he entered into the contract of September 1, 1899, under the terms of which he agreed to "assign, transfer and deliver unto me, or cause to be assigned, transferred and delivered unto me, upon its acquisition by you or for you, one-half of all of the preferred stock and one-half of all the common stock of the American Universal Mill Company, and of the York Structural Steel Company, assigned or transferred, or to be assigned or transferred to you under a contract therefor made by you with Rudolph T. McCabe and Clarence D. Simpson, and bearing date August 3rd, 1899, when the obligations assumed by you regarding the Luxembourg contract have been met and you are recouped for one-half of the amount." The contract of August 3d, referred to above, was the contract of purchase of the Ironton Company's plant, which involved the transfer of certain stocks of the American Universal Mill Company and of the York Structural Steel Company, and it is this contract of September 1, 1899, which the plaintiff asks to have specifically performed.

After making the contract of August 3d, certain parties who had been promising aid to Searles in carrying out his consolidation plans refused, by reason of a collapse in the steel securities market, to perform their part, and, although Searles made continued efforts, he was unable to meet his obligations, and he was obliged to get an extension of time

in which to make the agreed payments to Simpson and McCabe for their interests in the Ironton Company's plant. He finally gave his notes for the amount due, and as collateral to such notes he received the stock of the Mill Company, and deposited the same with the Trust Company of New York, under an agreement that the same should be held until the notes were paid under the terms mentioned, or, in case of default, that the same might be sold for the benefit of the holder of the notes. The plaintiff, notwithstanding his conduct toward Searles, who has since been forced into bankruptcy, insists that this stock was equitably assigned to him by the terms of the contract of September 1, 1899, and demands that this court shall decree that he be given this stock now held by the defendant trust company, and which is held as collateral to the purchase price of the stocks.

We are clearly of opinion that the plaintiff has failed to show facts entitling him to this relief. The services which he claims to have rendered, and which form the basis of his claim to this stock, were not rendered with that fidelity to duty which alone can warrant a court of equity in granting a specific performance of a contract, and there is certainly no good reason why Simpson and McCabe, who owned the stock of the Mill Company, should be deprived of the security which they hold for the payment of Searles' obligation to them, that the plaintiff, who has had an important commission from McCabe for securing the sale of the Ironton plant, involving the transfer of this stock, may be further reimbursed. We fully agree with the learned court at Special Term that Searles has never come into the possession of the stock mentioned in the contract of August 3d, as contemplated by that instrument, and by the contract of September 1st, which clearly involved the idea that the scheme of consolidation was to be carried out; and Searles having failed, after exerting all of his powers, to carry the project into execution, there is no good reason for awarding specific performance in favor of one who has failed to act in a manner demanded by good faith in the transaction. It is probably true that when the notes for which this stock is pledged are paid the plaintiff will be entitled, under his contract, to the delivery of the portion of the stock agreed upon, but he has no higher equities than the people who originally owned the stock which now stands pledged for the payment of a portion of the purchase price of the same. Searles has never come into possession of this stock, except that he indorsed it over to the trust company simultaneously with the giving of the notes, and until he becomes the real owner of the same the plaintiff has no rights in it superior to those of Simpson and McCabe, who had a right to determine the conditions on which they would transfer their property.

The judgment appealed from should be affirmed, with costs. All concur.