(50 Misc. Rep. 133.)

### HALL v. HARTFORD.

(Supreme Court, Special Term, New York County. March, 1906.)

SPECIFIC PERFORMANCE—CONTRACT—INDEFINITENESS.

> Plaintiff claimed the ownership of an entire estate by reason of an alleged contract by the deceased owner to leave her the same, and defendant claimed under a partnership with decedent in his business. The latter signed a letter authorizing one as his attorney in fact to close an arrangement with one H. in connection with the settlement of his interest in the estate and any claim against any property claimed to be a part of the estate, and authorized the delivery thereof to him on the closing of any arrangement. The person to whom the letter was addressed made an agreement with plaintiff, who it was claimed was represented by H., though defendant had no knowledge of it at the time, providing that each party to such agreement, with the assistance of the other, should secure as large an interest in the estate as possible and divide between them in proportions named. *Held*, that such an agreement was not authorized by the letter, and the evidence showing silence as to plaintiff's claim, secrecy attending the execution of the agreement, its production only after a long time, and, after defendant had settled his claim against the estate, tending to show a failure to disclose to defendant the material facts in the case, together with the indefiniteness of the agreement as to the amount at which the claims might be settled, specific performance of the agreement, which would result in turning over to the plaintiff a third of the property, of the value of above $850,000, which defendant received in settlement of his claim, would not be decreed.

Action by Helen Potts Hall against George H. Hartford for specific performance. Judgment for defendant.

Hatch, Keener & Clute (Lewis L. Dalafield, of counsel), for plaintiff. Henry Wollman (Robert H. McCarter, of counsel), ·for defendant.

FITZGERALD, J. A careful consideration of the extensive record, of the many lengthy exhibits in this action, and of the relations between the parties which they disclose, fully convinces me, in the light of the authorities upon the subject, that in the exercise of judicial discretion a specific performance of the contract sued upon should not be enforced. In Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647, the rule was recently reiterated that the right to the specific performance of a contract rests in judicial discretion, and may be granted or withheld upon a consideration of all the circum-

stances and in the exercise of a sound discretion (citing Seymour v. Delancey, 6 Johns. Ch. 222; Margraf v. Muir, 57 N. Y. 155; Conger v. N. Y., W. S. & B. R. R. Co., 120 N. Y. 29, 23 N. E. 983; Stokes v. Stokes, 155 N. Y. 590, 50 N. E. 342), and, further, that where it appears, for any reason, that the enforcement of an agreement would be unfair, inequitable, or unjust, the remedy should be denied; that each case must be governed by its own facts and circumstances; and that, unless the proof discloses a situation where good conscience and natural justice require the enforcement of the agreement, such relief should not be awarded. In Stokes v. Stokes, supra, it was stated that it is immaterial whether the fact that the contract is inequitable arises from the provisions of the contract, or from any external facts or circumstances which affect the situation and relations of the parties; for in either case it may constitute a sufficient ground for a court of equity to withhold this peculiar relief and to leave the parties to their legal remedy. Further illustrations of this rule are furnished by the cases of Clarke v. Rochester, Lockport & Niagara Falls R. R. Co., 18 Barb. 350; Peters v. Delaplaine, 49 N. Y. 362; Trustees of Columbia College v. Thacher, 87 N. Y. 311, 317, 41 Am. Rep. 365; Murdfeldt v. N. Y., W. S. & B. R. R. Co., 102 N. Y. 703, 7 N. E. 404, and Day v. Hunt, 112 N. Y. 191, 195, 19 N. E. 414. And, finally, in the recent case of York v. Searles, 97 App. Div. 331, 334, 90 N. Y. Supp. 37, 39, the court held:

"The doctrine is that the party asking the aid of the court must stand in conscientious relations toward his adversary, that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant. By virtue of this principle a specific performance will always be refused when the plaintiff has obtained the agreement by sharp and unscrupulous practices, by overreaching, by concealment of important facts, even though not actually fraudulent, by trickery, by taking undue advantage of his position, or by any other means which are unconscientious."

It is unnecessary to review all of the facts disclosed by the record in detail. They are so many, varied, and unusual, and so peculiar to the action itself, that a recital thereof would consume considerable space and time and would be of little service in the application of the conclusion reached to subsequent similar litigation. It is sufficient to state and emphasize those which necessitate the application to the issues herein of the authorities above cited and which require the exercise of the court's discretion in the manner above stated. The action is instituted to obtain from the defendant one-third of $700,000 of common stock and one-third of $150,000 preferred stock of the Great Atlantic & Pacific Tea Company, a very successful foreign corporation, under an alleged contract providing, not in express terms for a sale or assignment of said stock, but that the parties thereto should, with the assistance of each other and of their respective attorneys, unite to further their respective claims against the estate of G. F. Gilman to the best advantage possible, and divide the benefits thereof by the payment or exchange of prescribed portions of the amounts ultimately received by them on account of their said claims. The parties were claimants against that estate, of which the tea business

subsequently incorporated into the above-named corporation was a large and valuable part; the plaintiff substantially claiming the ownership of the entire estate by reason of an alleged contract to leave her the same in consideration of her acting as a daughter of said Gilman, and the defendant alleging a partnership with said Gilman in said business, to the great development and success of which the defendant had, indeed, in the absence of said Gilman, devoted a lifetime of exclusive attention and industry. The defendant received the amount of stock above stated, and the portion thereof which the plaintiff seeks is that prescribed by the alleged contract. The contract is not signed by the parties themselves, but is initialed by their alleged attorneys or agents; the alleged authority of the representatives of the defendant being sought to be established by a "power of attorney," in the shape of an undated letter or certificate signed by him, and addressed to that representative, stating that he can, as attorney at law and in fact, in connection with said estate, "close an arrangement with Edward Sargent Hatch, Esq., in connection with the settlement of my interest in the estate and my claim against any property that may be or may be claimed to be a part of said estate," and authorizing the delivery "to Mr. Knox [obviously meaning Mr. Hatch, the alleged attorney of the defendant] on the closing of any arrangement, as his evidence of your authority." Apart from the inherent informality or indefiniteness of the instrument itself, the initial obstacle to the award of the relief asked by the plaintiff, as, indeed, it is the primary contention of the defendant, is that the alleged power of attorney, considered alone or in connection with the surrounding circumstances, does not seem to authorize the making of the contract here sued on. The nature and extent of the authority created and conferred by it should be ascertained from the instrument itself. Henry v. Lane, 128 Fed. 243, 62 C. C. A. 625; Pollock v. Cohen, 32 Ohio St. 514. As it created a special agency, it must be strictly construed, and any general language contained therein must be limited by recitals of specific purposes. Martin v. Farnsworth, 49 N. Y. 555; Rossiter v. Rossiter, 8 Wend. 495, 24 Am. Dec. 62; Rice v. Tavernier, 8 Minn. 248 (Gil. 214), 83 Am. Dec. 778; Nat. Bank v. Norton, 1 Hill, 572; Blum v. Robertson, 24 Cal. 127; Geiger v. Bolles, 1 Thomp. & C. 129; Lewis v. Duane, 141 N. Y. 302, 36 N. E. 322; Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106; Herriman v. Shoman, 24 Kan. 387, 36 Am. Rep. 261; and New York cases cited.

It will first be noticed that the alleged power of attorney authorized the closing by the agents or attorney, with said Hatch, of an arrangement in connection with the settlement of Hartford's interest in the estate and Hartford's claim against any property that may be or may be claimed to be a part of said estate, which included the said tea business. Gilman had died intestate. The legal title to that estate was in his legal representatives, his administrators. They were the only persons who could take possession of the "estate," or who could claim any property as part thereof. The plaintiff here claimed the property, not as heir or next of kin of said Gilman, but in hostility to said estate and its representatives, by reason of an alleged contract be-

tween her and Gilman. Any arrangement by Hartford or his agent in connection with the settlement of his interest in the estate and his claim against any property claimed to be a part of said estate could only be made with those representatives. And, indeed, the defendant's authorization to his life-long friend and counselor to make such an arrangement was, under the attendant circumstances, very natural and reasonable; for, on the death of Gilman, who had not for a score of years even visited the places in which the tea business was conducted, Hartford, who during that period had personally conducted and developed it, found himself without a scrap of writing to support his allegation of partnership in the business to which he had devoted his life, with the probable result that he would be summarily excluded from participation in that business and its value and profits, unless he could close an arrangement settling his interest in the estate and his claim against any property that might be or might be claimed to be a part of said estate. The contract here sued on is not such an arrangement or settlement. It was an agreement or union of the parties and their attorneys in hostility to the estate. It expressly provided that each with the assistance of the other and their attorney should secure as large an interest in the estate and its property as possible, the defendant in the tea business and the plaintiff in the other property, and divide the same in the proportions prescribed. It did not, as it could not, arrange for a settlement of Hartford's interest in the estate or of his claim against any property thereof; for neither party thereto could legally speak or settle for said estate, the plaintiff's attorneys expressly admitting that he had no such power, even as between the alleged parties themselves it left unsettled, undetermined, and unstated Hartford's interest in the estate, and his claim against its property, for it was silent on the nature and extent of his interest as a partner in the tea business, contained no recital of recognition or acquiescence by and of Mrs. Hall of what his claim consisted of and amounted to, and, indeed, it imposed no restriction on either as to the settlement each could effect with the estate other than the very indefinite provisions that it should be as large as could be secured, with the assistance of the other and of the respective attorneys, or as advantageously as possible to both.

But it may be contended that the insertion of Mr. Hatch's name in the power of attorney, combined with the defendant's knowledge of the plaintiff's relations with Gilman and with the testimony of the witness Potts, that prior to the defendant's execution thereof he saw the defendant, informed him of the plaintiff's claim to the entire Gilman estate, including the tea business, stated that Mr. Hatch was her attorney, interviewed the defendant's attorney, and was instrumental in bringing about the further interviews between the attorneys which culminated in the power of attorney and contract, indicate clearly that the defendant in executing the "power of attorney" intended to and did authorize his attorney to close an arrangement with the plaintiff's attorney with respect to the united prosecution and to the settlement and division of their respective claims against the estate. On the other hand, it may be answered that, under the au-

thority of Humphreys v. N. Y., L. E. & W. R. R. Co., 121 N. Y. 435, 444, 24 N. E. 695, and applying the well-established rule of the law of agency, where the principal is disclosed, the insertion of Mr. Hatch's name in the instrument, without any designation or characterization as agent, attorney, or otherwise, authorized a contract to which Mr. Hatch alone would be a party and which he alone could enforce. But, assuming that, apart from the instrument itself, we may consider the surrounding circumstances to discover the intentions of the defendant when he executed the alleged "power of attorney," the contention of the plaintiff is not aided. The use of Mr. Hatch's name would be equally consistent with the belief in the defendant's mind that the former represented the estate, or some of the heirs and next of kin interested therein. Indeed, such belief and no other would accord with the language of the authorization to settle Hartford's interest in the estate, and his claim against any property thereof, and the existence of such belief might be further explained by the indications suggested by the testimony that at some time Mr. Hatch was in negotiations with certain of such heirs, or next of kin to represent them in the settlement of the estate and the litigation arising therefrom. Furthermore, there are improbabilities in the testimony of the witness Potts, concerning his interviews with the defendant and his agent, and the defendant's letter introducing his attorney, whom he had just met, that greatly impair its accuracy and render it of little or no weight in the face of the defendant's positive denial of any claim by Potts for the plaintiff at said interview to the entire tea business, which alone would occasion any negotiation between the parties herein, and of any knowledge that Mr. Hatch was the plaintiff's attorney until after the execution of the alleged power of attorney and contract. All the facts and circumstances disclosed by the record appeal to the conscience of the court to refuse a decree of specific performance of the contract here sued on with a quickening and compelling force which cannot be overcome, and lead to the conclusion that if there was not an intentional deception of the defendant, sustained until he could not ordinarily overcome its results, there was at least such a failure to disclose to him the material facts, to stand in conscientious relations toward him for that period, as to warrant a denial of the relief demanded. His advanced age; his implicit confidence in his old friend and counselor; the improbability that he (whose claim as a partner in a valuable and extensive business, however else incapable of proof, had the support of a lifetime of loyal endeavor and activity in its development) would directly or indirectly, in consideration of assistance from the plaintiff and her attorney and of a share of plaintiff's claim, execute or authorize the execution of an agreement relinquishing one-third of his claim to the plaintiff, the nature of whose claim was then undetermined and unstated by herself and her attorney; the informality of the "power of attorney," an undated letter, unsealed, unwitnessed, unacknowledged, with no mention of the plaintiff and no designation of Mr. Hatch as her agent or attorney; the indefiniteness of the language used, notwithstanding the magnitude and complexity of the interests involved; obtaining the "power of attorney" entirely in the defendant's

handwriting, copied "Chinese fashion," including patent errors, from the drafts submitted to him, while that signed by the plaintiff was typewritten; the fact that the alleged contract was so hastily prepared, either, as was first testified to, before the "power of attorney," or, according to subsequent testimony, contemporaneously therewith or immediately thereafter, and was not submitted with the "power of attorney" to the defendant for inspection, approval, or signature, although his office was very accessible (Craighead v. Peterson, 72 N. Y. 279, 28 Am. Rep. 150); the informality of the contract itself, unsigned, unsealed, unacknowledged, so far as the instrument itself discloses, by the parties themselves, but merely initialed by their alleged attorneys; the omission of the defendant's Christian name, with the consequent difficulty of indentifying himself, if necessary, as a party thereto; the absence of formalities entitling it to be recorded, although it might affect real property in different states; the precaution of securing an acknowledgment of the duplicate held for the plaintiff, with the omission of similar precaution for the benefit of the defendant, the provisions for the division of the proceeds of their respective claims against the estate, not among the parties themselves, but among their alleged attorneys individually, without designation of their representative character; the failure to deliver the contract to the alleged principals, the parties to this action; the mysterious attitude of secrecy adopted toward the officer requested to witness its execution; the retention and custody of the papers by the defendant's attorney in his son's safe deposit vault, with directions indorsed on the envelope in which the same were inclosed as to their disposition by the son in case of his father's death, until which time the envelope was not to be opened, all without the knowledge of the defendant and with the evident knowledge of the plaintiff's attorney; the failure, during the many intervening years, to bring the alleged contract to the knowledge or notice of the defendant himself, until the indefinite reference thereto in the letter of July 21, 1903, before which time the defendant had settled with the Gilman estate; the omission to hold a frank, straightforward, personal discussion with the defendant upon his denial of any liability to the plaintiff or her attorney, and the delay in taking formal action until immediately after the death of the defendant's attorney; the secrecy, so far as the defendant is concerned, which uniformly and consistently characterized the negotiations and transactions of the alleged agents from the beginning to the end, with the single exception of the submission to the defendant of the power of attorney that the same might be "automatically" copied by him—all constitute an overwhelming array of circumstances which, in the absence of a single word of explanation or justification therefor, necessitate a refusal to enforce an alleged contract by the defendant to deliver to the plaintiff one-third of the valuable proceeds of his life's work in exchange for one-half of a claim of the plaintiff, of the nature and foundation of which she and her attorney were then ignorant, which, as opportunity seemed to be offered, she used as the basis of negotiation with other persons claiming an interest in the estate, and which she finally settled for a sum that, compared with the defendant's interest, was very small

While these reasons constitute the main ground upon which this decision is based, yet, in view of the doubt as to performance or tender by the plaintiff, there may be some force in the objection to the enforcement of the specific performance of the contract, because of the absence of mutuality, because of the unwillingness or inability of a court of equity to direct such performance of all the acts contracted to be done by the plaintiff herself and by her attorney. Allegheny Baseball Club v. Bennett (C. C.) 14 Fed. 257; Martin v. Platt, 5 N. Y. St. Rep. 284; Talbot v. Adams, 12 N. Y. Wkly. Dig. 410; Ide v. Brown, 178 N. Y. 26, 39, 70 N. E. 101. A part of the consideration for the defendant's alleged contract was the assistance of the plaintiff and her attorney in enabling the defendant to secure as large an interest in the tea business as possible. It required and called for the exercise of the knowledge, skill, and judgment, personal and peculiar, not only to the plaintiff, but of her attorney, through the many and varied successive acts in the courts of the expected litigations or negotiations for settlement, which, of course, a court could not command or compel them, and especially the attorneys, to render. As stated in Bigler v. Baker, 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255, however, the true rule is believed to be that want of mutuality in such case is not a valid objection, even to decree specific performance, where the moving party has performed all of the conditions imposed upon him and brought himself clearly within the terms of the agreement, citing "the leading case in this country" (Clason v. Bailey, 14 Johns. 484), and, of course, tender by the plaintiff would be waived by the defendant's repudiation of the contract or refusal to perform. In view of the refusal of the plaintiff and her attorney to aid the legal representatives of the estate in defeating the Smith claim by surrendering to them the documentary evidence destructive thereof, and because of a default in her action against Chapman and others to recover money due Gilman, claimed by her as part of the estate to which she was entitled, which she has not yet opened, it may be justly said that, in those respects and to that extent, she failed to so fulfill her part of the contract as to entitle her to obtain its specific performance. Jones v. Lynds, 7 Paige, 301; Wheeler v. Wheeler (Sup.) 2 N. Y. Supp. 496; Burling v. King, 66 Barb. 633; Babcock v. Emrich, 64 How. Prac. 435; Rushton v. Thompson (C. C.) 35 Fed. 635. As previously indicated in the discussion of the authority created by the power of attorney and of the question whether the contract was executed in accordance therewith, the alleged agreement is uncertain and indefinite in the fact, among others, that it imposed no restriction on either party as to the settlement he or she might make with the estate, and provided for no consent or ratification of any kind of or by either party to the settlement effected by the other. And courts of equity will not decree specific performance of a contract which is uncertain or indefinite. To authorize such it must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made (Stokes v. Stokes, 148 N. Y. 716, 43 N. E. 211; Lighthouse v. Third Nat. Bank, 162 N. Y. 336, 56 N. E. 738); where specific performance

of a contract for the sale of a chattel was refused because the chattel to be delivered on the contract was an unascertained and unidentified portion of a larger quantity (United Press v. N. Y. Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288) ; an action for damages for breach of contract, where the contract was held so indefinite by reason of its failure to state the price to be paid by the defendant as to preclude a recovery of substantial damages. See, also, Ripsom v. Hart, 64 App. Div. 593, 72 N. Y. Supp. 791.

The views already expressed render unnecessary a determination of the defendant's contention that the alleged contract was one for the sale or exchange of evidence, and was therefore illegal. It is conceivable that such may have been one of the purposes thereof, since the supply of such evidence would, under the circumstances, naturally be one of the most effectual ways in which each contracting party could be of assistance to the claim of the other; but as it clearly contemplates purposes other than that, such as the assistance of the attorneys, its terms will bear a construction consistent with its validity in that respect, and such construction should, therefore, be given it. Upon the authority, however, of Winne v. Winne, Stokes v. Stokes, and York v. Searles, supra, specific performance must be refused.

The complaint must be dismissed, but without prejudice to an action at law for damages. Settle decision and judgment on notice.